[No. B189667. Second Dist., Div. Four. Oct. 29, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
JULIO HENRY TENA, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of parts B. through E. of the Discussion.

COUNSEL

Laura S. Kelly, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Mary Jo Graves and Dane R. Gillette, Chief Assistant Attorneys General, Pamela C. Hamanaka, Assistant Attorney General, Lawrence M. Daniels and Stacy S. Schwartz, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

MANELLA, J.—

## PROCEDURAL BACKGROUND

On September 26, 2005, an amended information was filed charging appellant Julio Henry Tena with corporal injury to Sonia Verdugo, the mother of his child (Pen. Code, § 273.5, subd. (a)).[1] It also alleged that appellant had suffered a prior conviction for the same offense within seven years (§ 273.5, subd. (e)(1)), two prior convictions within the meaning of section 667.5, subdivision (b), and two prior convictions for purposes of the "Three Strikes" law (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)). Appellant pleaded not guilty to the charge and denied the special allegations.

Trial was by jury. On September 28, 2005, the jury found appellant guilty as charged. Following a bench trial, the trial court found true the allegations that appellant had a prior misdemeanor conviction for corporal injury to a coparent, two prior prison terms within the meaning of section 667.5, subdivision (b), and one prior "strike" under the Three Strikes law. On March 7, 2006, the trial court imposed the upper term on appellant's offence, sentenced him to 12 years in state prison, and awarded 300 days in presentence custody credits. Appellant was sentenced under the then governing authority of *People v. Black* (2005) 35 Cal.4th 1238 [29 Cal.Rptr.3d 740, 113 P.3d 534] (*Black I*), which held that *Blakely v. Washington* (2004) 542 U.S. 296 [159 L.Ed.2d 403, 124 S.Ct. 2531] (*Blakely*) was inapplicable to the selection of the upper term, and which was reversed on this matter in *Cunningham v. California* (2007) 549 U.S. 270, ___ [166 L.Ed.2d 856, 127 S.Ct. 856, 871] (*Cunningham*).

In our original opinion (*People v. Tena* (May 30, 2007, B189667), review granted Sept. 12, 2007, S153723), we concluded under *Blakely* and

---

[1] All further statutory citations are to the Penal Code.

*Cunningham* that the trial court had improperly imposed the upper term on appellant's conviction for corporal injury to the mother of his child; in addition, appellant's custody credits were modified for reasons not relevant here. We reversed the judgment with respect to the imposition of the upper term, and remanded the matter for resentencing; in all other respects, we affirmed the judgment, as modified. On September 12, 2007, our Supreme Court granted respondent's petition for review, which challenged only our determination regarding the imposition of the upper term, and transferred the matter to us for reconsideration in light of *People v. Black* (2007) 41 Cal.4th 799 [62 Cal.Rptr.3d 569, 161 P.3d 1130] (*Black II*) and *People v. Sandoval* (2007) 41 Cal.4th 825 [62 Cal.Rptr.3d 588, 161 P.3d 1146] (*Sandoval*).[2] Upon reconsideration, we affirm the judgment, as modified, in its entirety.

## FACTUAL BACKGROUND

### A. *Prosecution Evidence*

At trial, the key prosecution witness was Sonia Verdugo, who testified as follows: She and appellant had been together for seven years, and had two children. As of April 5, 2005, they no longer lived together, but saw each other on a regular basis.

Between 9:30 and 10:00 p.m. on that date, appellant drove in Verdugo's car to pick her up at Intercoast College, where she attended classes in alcohol and drug counseling. He was dressed up, and told her that he was going to a barbecue, using her car. She responded, "No, you're not." When appellant removed the keys from the ignition and said in abusive language that she was "going nowhere," she became scared and walked through the parking lot towards a nearby street. Appellant pursued her on foot, said, "Get back into the car, fucking bitch," and hit her on her left cheek.

Verdugo reached the street and turned toward a relative's house. Appellant retrieved the car and followed her, telling her in abusive language to get into the car. He reappeared on foot before her, and they argued. Verdugo kicked him on the shin to move him out of her path, and she fled past him. After some distance, she hid behind some bushes in front of a house.

When Verdugo judged that appellant had driven past her location, she stood up and stumbled, thereby spraining her ankle. Appellant approached her on foot, and they resumed arguing. He taunted her with the car keys by

---

[2] Our conclusions regarding appellant's contentions on issues other than those related to *Black II* and *Sandoval* remain as stated in our original opinion (*People v. Tena, supra*, review granted Sept. 12, 2007, S153723).

dangling them out of her reach. When she grabbed the keys away from him, he wrestled or tripped her to the ground, jumped on top of her, and hit her shoulder. Appellant then took back the keys and got off of her.

Verdugo again walked toward her relative's house, crying and asking for help. Appellant repeatedly urged her to get into the car and said, "They're going to call the cops." She decided to enter the car because she was in pain. As they sat in the car, a police vehicle stopped and two officers approached them. Appellant told Verdugo—who had been arrested for drug use and had completed a court-ordered drug program—not to say anything to them because he had drugs in the car. She told the officers that she had hurt her ankle, and they advised her to go to a nearby hospital. She did not complain about appellant's conduct because she feared him.

Appellant drove Verdugo to her house, retrieved her medical insurance card, and took her to a hospital. On the way to the hospital, he apologized for his conduct. When Verdugo was admitted to the hospital, she did not complain about appellant because he was present, and she was fearful of him. After he left, she remained silent about his conduct because she felt embarrassed and stupid.

On April 6, 2005, Verdugo complained to the Temple City Sheriff's Department that appellant had stolen her car. Appellant was briefly arrested and then released. On April 9, 2005, she registered a complaint about appellant's physical abuse with the West Covina Police Department. At that time, there were visible injuries on her body.

Ana Avila testified that on April 5, 2005, she saw a man and a woman swearing at each other and fighting in her front yard. The man pushed the woman, who fell against a tree. When she stood up, he hit her on the left side of her face. Avila then went to make a 911 phone call. When she returned, she saw the man and the woman walking away from each other.

### B. *Defense Evidence*

Verdugo was also called as a defense witness. She testified that when she reported appellant's misconduct on April 9, 2005, she did not blame him for scratches that police officers noticed on her hands because she was not sure that he was responsible for them. In reporting his abusive conduct, she did not mention appellant's threats to harm her and to tell officers that there were drugs in her car. She first referred to these threats during a court hearing.

West Covina Police Officer Major Whitlock testified that on April 5, 2005, he responded to a 911 call concerning a man and woman fighting in a front

yard. He found appellant and Verdugo walking together, engaged in a verbal argument. When he contacted Verdugo, who was crying, he did not notice that she had any injuries. He did not arrest anyone.

West Covina Police Officer Roosevelt Austin testified that he and Whitlock detained appellant and Verdugo on April 5, 2005. Verdugo told him only that she had sprained her ankle, and he did not notice that she had any other injuries, although she limped as she walked. When he offered to take her to a hospital, she said that she would be okay.

## DISCUSSION

Appellant contends that (1) the trial court improperly denied his motions for self-representation under *Faretta v. California* (1975) 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525] (*Faretta*), (2) the prosecutor engaged in misconduct, (3) the jury was misinstructed, and (4) there was sentencing error.

### A. *Faretta*

Appellant contends that his requests for self-representation at a pretrial proceeding and at the preliminary hearing were improperly denied. We disagree.

#### 1. *Governing Principles*

In *Faretta*, the United States Supreme Court held that a defendant in a criminal case "has a constitutional right to proceed without counsel when he voluntarily and intelligently elects to do so." (*Faretta, supra*, 422 U.S. at p. 807, italics omitted.) The defendant thus possesses two mutually exclusive constitutional rights under the Sixth Amendment of the United States Constitution regarding representation: the right to be represented by counsel at all critical stages of a criminal prosecution, and the right to represent himself or herself. (*People v. Marshall* (1997) 15 Cal.4th 1, 20 [61 Cal.Rptr.2d 84, 931 P.2d 262] (*Marshall*).) Unlike the former, the latter right is not self-executing. (*Ibid.*) "The right to counsel persists unless the defendant affirmatively waives that right"; moreover, "[c]ourts must indulge every reasonable inference against waiver of the right to counsel." (*Ibid.*)

Generally, "[a] trial court must grant a defendant's request for self-representation if three conditions are met. First, the defendant must be mentally competent, and must make his request knowingly and intelligently, having been apprised of the dangers of self-representation. [Citations.] Second, he must make his request unequivocally. [Citations.] Third, he must

make his request within a reasonable time before trial. [Citations.]" (*People v. Welch* (1999) 20 Cal.4th 701, 729 [85 Cal.Rptr.2d 203, 976 P.2d 754], overruled on another ground in *People v. Blakley* (2000) 23 Cal.4th 82, 89 [96 Cal.Rptr.2d 451, 999 P.2d 675]. The trial court may not deny the request on the basis of the defendant's inability to present a defense, provided that the defendant is competent to stand trial. (*People v. Welch*, at pp. 732–733.)

### 2. *Underlying Proceedings*

On June 22, 2005, approximately three weeks before the preliminary hearing, appellant appeared at a hearing before Commissioner Harold J. Mulville with his court-appointed public defender, Eric Stanford. Stanford explained that although a different public defender would probably handle appellant's case, he had discussed the case with appellant, and requested that a date be set for the preliminary hearing. The prosecutor then informed Commissioner Mulville that he had offered appellant a plea agreement that would limit his term of imprisonment to four years.

In the course of the hearing, Stanford stated that appellant wished to address the court. Appellant complained that Stanford had declined to subpoena several witnesses to appear at the preliminary hearing, including employees of the hospital to which appellant took Verdugo on April 5, 2005. Commissioner Mulville responded that appellant should discuss the matter with the public defender ultimately assigned to handle his case. The following exchange then occurred:

"[Appellant]: Sir, I want to go pro per.

"[Commissioner Mulville]: You can't."

There was no further discussion of appellant's request at the hearing, which terminated after a brief discussion of the plea agreement. When the prosecutor explained the agreement, appellant indicated that he would not accept it, and he again asked Commissioner Mulville whether subpoenas would be issued to the witnesses he had identified. Commissioner Mulville advised him to provide his public defender with the names of the witnesses, and the hearing ended.

The preliminary hearing occurred before Superior Court Judge Michael A. Latin on July 12, 2005. Immediately prior to the hearing, appellant asserted a *Marsden* motion regarding his public defender, Dana Flaum.[3] During the

---

[3] In *People v. Marsden* (1970) 2 Cal.3d 118, 123 [84 Cal.Rptr. 156, 465 P.2d 44], our Supreme Court held that if a defendant seeks to have new counsel appointed, the trial court

hearing on the motion, appellant stated that he had decided to hire a private attorney to represent him because Flaum and his other public defenders had declined to subpoena the hospital employees and other individuals as witnesses. According to appellant, his private attorney was in trial, and could not represent him for two weeks. Appellant argued that the witnesses he wished to subpoena would establish that Verdugo had not been injured, and that the charge against him was "a lie"; he further asserted that he would be ready for the preliminary hearing with his private counsel in two weeks. Regarding Flaum, appellant stated: "I don't want him, sir. I want to fire him. . . ."

Judge Latin denied the *Marsden* motion, reasoning that the decision not to subpoena the witnesses was a tactical decision within Attorney Flaum's authority, and that appellant had otherwise not stated good cause to relieve Flaum. In so ruling, Judge Latin directed that the preliminary hearing would go forward, and informed appellant that he was welcome "to try to bring [private counsel] on board after the preliminary hearing." Appellant became agitated and threatened to walk out of the courtroom, stating that he was "getting railroaded." In response to Judge Latin's assurance that "[y]ou do have the right, if you have the funds, to bring in your own lawyer," appellant stated, "I have the money. No problem, Sir," but insisted he was "not going to sit here and get railroaded." Appellant again threatened to walk out of the courtroom, insisting, "you're going to tackle me down, whatever you do. I'm going to get up and walk out." Following appellant's outbursts, the court took a brief recess, suggesting the bailiff might consider taking "some measures in lockup" before returning appellant to the courtroom.

After the recess, the prosecutor and Flaum announced themselves ready to proceed with the preliminary hearing. The following dialogue occurred:

"[Appellant]: Can I go pro per, sir? Your Honor, may I go pro per?

"[Judge Latin]: No.

"[Appellant]: Why? I have the right.

"[Judge Latin]: The request is not timely. You can revisit that after the preliminary hearing, at your next appearance."

Appellant did not renew his request to proceed in propria persona during the underlying proceedings, including his trial, at which he appeared before Judge Robert M. Martinez, represented by the private attorney he had identified during the *Marsden* hearing.

must inquire into the bases of the defendant's dissatisfaction and exercise discretion in deciding whether to grant the defendant's request.

### 3. Analysis

The key issues before us are (1) whether appellant's remarks concerning self-representation were unequivocal invocations of his *Faretta* rights, and (2) whether appellant abandoned his request for self-representation after the preliminary hearing. As explained below, we conclude that appellant's remarks were not unequivocal (see pt. 3.a., *post*); in addition, we conclude that even if appellant requested self-representation, he waived this request through abandonment after the preliminary hearing, and that any erroneous denial of self-representation at the preliminary hearing was harmless under *People v. Pompa-Ortiz* (1980) 27 Cal.3d 519, 529 [165 Cal.Rptr. 851, 612 P.2d 941] (*Pompa-Ortiz*) and *Coleman v. Alabama* (1970) 399 U.S. 1, 11 [26 L.Ed.2d 387, 90 S.Ct. 1999] (*Coleman*) (see pt. 3.b., *post*).

#### a. Equivocal Remarks

■ We begin by assessing whether appellant made an unequivocal *Faretta* request. On this matter, courts must determine "whether the defendant truly desires to represent himself or herself." (*Marshall, supra*, 15 Cal.4th at p. 23.) Thus, "an insincere request or one made under the cloud of emotion may be denied." (*Id.* at p. 21.) In assessing appellant's remarks, we are not bound by Commissioner Mulville's and Judge Latin's responses, and their failure to make express findings on this matter does not oblige us to conclude that appellant's *Faretta* rights were infringed. (*Id.* at pp. 24–25.)

■ As our Supreme Court explained in *Marshall*, in addressing this issue, "the court's duty goes beyond determining that some of [the] defendant's words amount to a motion for self-representation. The court should evaluate all of a defendant's words and conduct to decide whether he or she truly wishes to give up the right to counsel and represent himself or herself and unequivocally has made that clear." (*Marshall, supra*, 15 Cal.4th at pp. 25–26.) Applying these principles, courts have concluded that under some circumstances, remarks facially resembling requests for self-representation were equivocal, insincere, or the transitory product of emotion.

In *Marshall*, the defendant represented himself during some pretrial proceedings, and then requested and received a court-appointed attorney. (*Marshall, supra*, 15 Cal.4th at pp. 15–19.) When the attorney asked the defendant for body tissue samples, the defendant told the trial court that he wanted to " 'take the pro per status.' " (*Id.* at p. 18.) The trial court construed this remark as a *Faretta* request and denied it. (*Id.* at p. 19.) The court in *Marshall* concluded that the remark was an insincere ploy to disrupt the proceedings, pointing to the defendant's self-acknowledged inability to defend himself and his emotional response to his attorney's attempt to obtain the samples. (*Id.* at pp. 25–26.)

Again, in *People v. Scott* (2001) 91 Cal.App.4th 1197, 1204 [111 Cal.Rptr.2d 318], the defendant asserted a *Marsden* motion before trial. After the trial court denied the motion, the defendant stated, " 'If that's the case, I hereby move the court to let me go pro se.' " (*Id.* at pp. 1204–1205 & fn. 3.) When the trial court asked, " 'For the record . . . are you sure you want to represent yourself?' " the defendant replied: " 'Yes. I do, judge. I don't want [appointed defense counsel] to represent me.' " (*Id.* at p. 1205.) He also said, " '[I]f I can't get a [new] state appointed attorney, then I['ll] represent myself,' " and " 'For the record, I don't want this attorney representing me. You the court is [*sic*] coercing me.' " (*Ibid.*) The court in *Scott* concluded that these remarks, viewed in context, were too equivocal to constitute a *Faretta* request, and that the defendant made them out of frustration at the denial of his *Marsden* motion. (*Id.* at pp. 1205–1206; see also *People v. Danks* (2004) 32 Cal.4th 269, 295–297 [8 Cal.Rptr.3d 767, 82 P.3d 1249] [defendant's remark, " 'I want to defend myself and go pro. per. If I'm not allowed to go pro. per., I would at least like to be cocounsel . . .' " (italics omitted), viewed in context, was not a sincere *Faretta* request].)

■ Relevant to our inquiry is whether appellant reasserted a request for self-representation when presented with the opportunity to do so. In *People v. Valdez* (2004) 32 Cal.4th 73, 91–92 [8 Cal.Rptr.3d 271, 82 P.3d 296] (*Valdez*), the defendant asserted a *Marsden* motion, which the trial court denied. The defendant then stated: " 'Well, in this matter I am—my constitutional rights if I want to go pro. per. on this case I could do that.' " (*Id.* at p. 98.) The trial court responded to this as a *Faretta* request and denied it. (*Ibid.*) The defendant did not refer to self-representation at his next court appearance, which was conducted by a different bench officer. (*Id.* at p. 100.) After several hearings, he made a *Faretta* request to this bench officer, which was denied as untimely. (*Ibid.*) The court in *Valdez* concluded that the defendant had not asserted an unequivocal *Faretta* request, reasoning, inter alia, that he made only a single reference to self-representation, and failed to press for self-representation at his next court appearance before the new bench officer. (*Id.* at pp. 99–101; see also *Jackson v. Ylst* (9th Cir. 1990) 921 F.2d 882, 887–888 [defendant's failure to renew his request for self-representation indicates that it was equivocal].)

■ In our view, appellant's remarks were impulsive reactions to his frustrated attempts to secure an attorney who would subpoena the witnesses that he desired, rather than unequivocal *Faretta* requests. His statements and conduct establish that his goal was a defense based on these witnesses but presented by counsel, rather than by himself. Before Commissioner Mulville, appellant complained about his public defender's failure to obtain the presence of the witnesses, and asked whether he could have subpoenas issued to the witnesses—presumably, so that his public defender could present their testimony. Only after Commissioner Mulville told him to consult his public

defender did appellant refer to self-representation, which Commissioner Mulville denied. Although appellant otherwise spoke vigorously in court, he immediately returned to the topic of the witnesses, and did not pursue self-representation. As in *Valdez*, appellant made a single remark about self-representation, apparently born of frustration at his public defender's decisions.

That appellant sought an attorney amenable to his defense strategy, rather than self-representation, is corroborated by his subsequent behavior. Much like the defendant in *Valdez*, he did not immediately avail himself of the opportunity presented by a new bench officer to press for self-representation. Instead, he engaged a private attorney, and at the inception of the preliminary hearing, raised a *Marsden* motion before Judge Latin, seeking to continue the preliminary hearing so that his private attorney could present the witnesses he desired. Appellant's conduct strongly suggests that his remark about self-representation to Commissioner Mulville stemmed from a desire to be represented by counsel willing to secure these witnesses, rather than from a desire to represent himself.

We conclude that appellant's remarks about self-representation before Judge Latin arose from the same desire. Only after Judge Latin denied the *Marsden* motion and a continuance to facilitate representation by his private attorney did appellant refer to self-representation, immediately following his emotional response to these rulings. Thereafter, despite Judge Latin's express invitation, appellant declined to revisit the question of self-representation, even though his trial was conducted before a different bench officer. Instead, he appeared at all proceedings with his private attorney, who at no time suggested he was appearing because appellant's request for self-representation had been denied. As in *Marshall*, *Scott*, and *Valdez*, appellant's remarks to Judge Latin appear to have stemmed solely from his frustrated desire for representation by private counsel; moreover, as in *Marshall*, his remarks appear to be an attempt to obtain a fresh opportunity to request a continuance, and thereby delay the proceedings.

### b. *Waiver*

Even if appellant made an unequivocal *Faretta* request that may have been wrongfully denied, the record establishes that appellant waived his right to self-representation. As we explain below, (1) he abandoned his request after the preliminary hearing, and (2) any error at the preliminary hearing was harmless.

### i. *Abandonment*

Numerous courts have held that after a defendant invokes the right to self-representation, a waiver may be found if it reasonably appears that the

defendant abandoned the request. (E.g., *People v. Dunkle* (2005) 36 Cal.4th 861, 907–908 [32 Cal.Rptr.3d 23, 116 P.3d 494]; *People v. Kenner* (1990) 223 Cal.App.3d 56, 60–62 [272 Cal.Rptr. 551]; *Brown v. Wainwright* (5th Cir. 1982) 665 F.2d 607, 611.) Instructive applications of this principle are found in *People v. Stanley* (2006) 39 Cal.4th 913 [47 Cal.Rptr.3d 420, 140 P.3d 736] (*Stanley*) and *Wilson v. Walker* (2d Cir. 2000) 204 F.3d 33 (*Wilson*).

In *Stanley*, the defendant raised the issue of self-representation during a *Marsden* hearing, which occurred before the preliminary hearing. (*Stanley*, *supra*, 39 Cal.4th at p. 929.) The trial court declined to permit the defendant to represent himself, and denied the *Marsden* motion. (*Id.* at pp. 930–931.) Thereafter, the defendant accepted representation by several court-appointed attorneys without requesting self-representation. (*Id.* at p. 933.) The court in *Stanley* concluded not only that the defendant had not knowingly and intelligently waived his right to counsel, but that his subsequent conduct established that he had abandoned his desire to invoke his *Faretta* rights. (*Id.* at p. 933.)

Again, in *Wilson*, the defendant tried to replace his court-appointed attorney before trial, and repeatedly asserted that he wanted to represent himself. (*Wilson*, *supra*, 204 F.3d at p. 35.) The trial court denied the motion for new counsel and application for self-representation. (*Id.* at pp. 35–36.) The defendant later received a second attorney, who stated upon appointment that the defendant wished to represent himself. (*Id.* at p. 36.) In response, the trial permitted the second attorney one week to review the defendant's request to proceed in propria persona. (*Ibid.*) The second attorney apparently did not revisit the request, and when the trial court later appointed a third attorney, the defendant voiced no objection and never renewed his request for self-representation. (*Ibid.*) The court held that the defendant had waived his right to self-representation, pointing to the trial court's remark to the second attorney indicating that it had not foreclosed self-representation, and to the defendant's persistent failure to renew the request, despite his willingness to assert his perceived rights in court. (*Id.* at pp. 38–39.)

On the record before us, we conclude that following the preliminary hearing, appellant abandoned any desire for self-representation expressed to Commissioner Mulville and Judge Latin. He never accepted Judge Latin's invitation to renew his request following the preliminary hearing, notwithstanding his demonstrated proclivity to speak for himself and opportunity to do so before a new bench officer. Instead, he proceeded as he had said he wished to do at the preliminary hearing, viz., with retained counsel of his choice.

Appellant contends that the rulings by Commissioner Mulville and Judge Latin rendered further invocations of his right to self-representation futile.

His reliance on *U.S. v. Arlt* (9th Cir. 1994) 41 F.3d 516 (*Arlt*), *People v. Dent* (2003) 30 Cal.4th 213 [132 Cal.Rptr.2d 527, 65 P.3d 1286], *U.S. v. Hernandez* (9th Cir. 2000) 203 F.3d 614 (*Hernandez*), and *Williams v. Bartlett* (2d Cir. 1994) 44 F.3d 95 (*Williams*) is misplaced, as these cases are factually distinguishable.

In *Arlt*, the defendant made a request before trial to proceed in propria persona. (*Arlt, supra*, 41 F.3d at pp. 517–518.) After a hearing, the trial court denied the request on the ground that the defendant could not present an adequate defense. (*Ibid.*) The defendant subsequently hired private counsel and did not renew his request. (*Ibid.*) The Ninth Circuit held that this conduct did not constitute an abandonment of the request, reasoning that the trial court's denial precluded self-representation, and forced the defendant to pursue his remaining alternatives. (*Id.* at p. 522.)

Here, unlike the defendant in *Arlt*, appellant cannot reasonably have regarded Commissioner Mulville's response to his remarks as conclusively foreclosing the option of self-representation. As the court indicated in *Valdez*, the preliminary hearing was conducted by a different bench officer, and thus provided appellant with a fresh opportunity to make a *Faretta* request. (*Valdez, supra*, 32 Cal.4th at pp. 99–101.) Nor did Judge Latin's response to his remarks eliminate the option of self-representation; on the contrary, Judge Latin expressly invited appellant to revisit the issue at his next appearance.

In *Dent*, the defendant, who was facing a potential death sentence, was represented by attorneys who were repeatedly late for proceedings. (*People v. Dent, supra*, 30 Cal.4th at p. 216.) When they were not present at the beginning of the defendant's trial, the court told the defendant that new counsel would be appointed for him because he could not represent himself. (*Ibid.*) Concerned that the defendant might make incriminating remarks, the trial court prevented him from speaking except through counsel. (*Ibid.*) Shortly thereafter, the attorneys appeared and conferred with the defendant. (*Ibid.*) They informed the trial court that the defendant wished to proceed with one of his former attorneys or to represent himself. (*Id.* at p. 217.) The trial court peremptorily denied the request for self-representation, stating, " 'Not in a death penalty murder trial,' " and ordered both attorneys relieved. (*Ibid.*) The defendant never renewed his *Faretta* request. (*Ibid.*)

The court in *Dent* concluded that the trial court had denied the *Faretta* request for an improper reason, and that the record did not otherwise support the denial. It rejected the contention that the defendant's failure to renew the request was evidence of equivocation, noting the trial court's instruction not to speak except through counsel, coupled with its firm denial of the *Faretta* request, "may well have convinced defendant the self-representation option

was simply unavailable, and making the request again would be futile." (*People v. Dent, supra,* 30 Cal.4th at p. 219.) As we have explained, that is not the case here.

In *Hernandez,* the defendant asserted a request for self-representation at a pretrial status conference. (*Hernandez, supra,* 203 F.3d at p. 617.) Following a hearing, the district court denied the request on the ground that the defendant did not understand the legal issues and was incapable of defending himself. (*Id.* at p. 618.) In so ruling, the district court stated that it would reconsider the request if the defendant persisted in it. (*Id.* at pp. 623–624.) The Ninth Circuit held that the defendant's failure to renew his motion did not establish that his request was equivocal. (*Id.* at pp. 623–624.) It reasoned that the district court's ground for denying the request was unlikely to change, and thus the defendant reasonably viewed the option of self-representation as foreclosed, notwithstanding the district court's remark that he could renew his motion. Unlike *Hernandez,* Judge Latin's announced ground for denying self-representation at the time of the preliminary hearing—untimeliness—was not a settled or fixed condition permanently foreclosing the option of appellant's self-representation. Moreover, unlike *Hernandez,* appellant appeared before a different bench officer for trial.

Finally, in *Williams,* the defendant repeatedly asked to represent himself during the pretrial proceedings. (*Williams, supra,* 44 F.3d at pp. 97–98.) The trial court eventually denied the request on the ground that the defendant lacked legal training, and the defendant thereafter failed to renew his request. (*Ibid.*) The court in *Williams* concluded that the pretrial request was wrongfully denied and rejected the contention that the defendant had waived his right to self-representation, reasoning that the pretrial request was denied on grounds that the defendant could not cure before trial. (*Id.* at p. 101.) As we have indicated, no such grounds were given here. In short, appellant's conduct following the preliminary hearing demonstrates that by the time of trial, and likely well before, appellant had abandoned any desire he may have harbored to represent himself, in favor of proceeding to trial with retained counsel of his choice.

### ii. *Harmless Error*

In any event, we conclude that any error in the rejection of appellant's *Faretta* request at the preliminary hearing stage is harmless in this case. Although most errors in criminal proceedings are subject to harmless error analysis, the United States Supreme Court has identified a small number of "structural" errors at trial—i.e., "structural defect[s] affecting the framework within which the trial proceeds"—that are reversible per se. (*Arizona v. Fulminante* (1991) 499 U.S. 279, 310 [113 L.Ed.2d 302, 111 S.Ct. 1246]; see

*People v. Stewart* (2004) 33 Cal.4th 425, 462 [15 Cal.Rptr.3d 656, 93 P.3d 271].) These structural errors "include: (i) 'total deprivation of the right to counsel at trial'; (ii) trial by a 'judge who was not impartial'; (iii) 'unlawful exclusion of members of the defendant's race from the grand jury'; (iv) denial of the right to self-representation at trial; and (v) denial of the right to a public trial." (*People v. Stewart, supra,* 33 Cal.4th at p. 462, quoting *Arizona v. Fulminante, supra,* 499 U.S. at pp. 309–310.) However, an error that would constitute a structural defect *at trial* is not invariably reversible per se when confined to the preliminary hearing. Thus, in *Coleman,* the United States Supreme Court held that an improper denial of counsel confined to the preliminary hearing is subject to harmless error analysis. (*Coleman, supra,* 399 U.S. at p. 11.)

The question presented here is whether a defendant who is denied the right of self-representation at the preliminary hearing, but who subsequently waives this right and is represented at trial by counsel of his choice, must, on appeal, establish prejudice from the denial. In *Pompa-Ortiz, supra,* 27 Cal.3d at page 529, our Supreme Court held that irregularities at the preliminary hearing are reviewed on appeal under "the appropriate standard of prejudicial error and . . . require reversal only if defendant can show that he was deprived of a fair trial or otherwise suffered prejudice as a result of the error at the preliminary examination. The right to relief without any showing of prejudice [is] limited to pretrial challenges of irregularities." (*Pompa-Ortiz, supra,* 27 Cal.3d at p. 529.) In so holding, the court expressly noted the holding in *Coleman,* and remarked that "even . . . a situation as extreme as the denial of counsel" at the preliminary hearing is subject to harmless error analysis. (*Pompa-Ortiz,* at pp. 529–530.)

■ The focus of our inquiry, therefore, is whether harmless error analysis is also appropriate for an improper denial of self-representation at the preliminary hearing. As the United States Supreme Court explained in *Faretta,* the Sixth Amendment "constitutionalizes the right in an adversary criminal trial to make a defense as we know it," and thus accords the defendant a set of rights "necessary to a full defense." (*Faretta, supra,* 422 U.S. at p. 818.) These rights differ in their underlying rationale. (*Id.* at pp. 819–821, 832–835.) The right to self-representation honors the defendant's capacities for choice and responsibility, whereas the right to counsel rests on the recognition that most defendants are incapable of mounting an effective defense by themselves. (*Id.* at pp. 832–835.) Nonetheless, both rights are tethered to the controlling principle of the Sixth Amendment: "The right to defend is given directly to the accused; for it is he who suffers the consequences . . . ." (422 U.S. at pp. 819–820.) Accordingly, each right is granted personally to the defendant and is subject to the defendant's choice and control. (*Id.* at pp. 819–821, 832–835.)

The differences between the rationales for the rights support divergent accounts as to why their erroneous denial at trial constitutes a structural defect in the trial. Addressing the right of self-representation at trial, the United States Supreme Court has explained: "Since the right of self-presentation is a right that when exercised usually increases the likelihood of a trial outcome unfavorable to the defendant, its denial is not amenable to 'harmless error' analysis. The right is either respected or denied; its deprivation cannot be harmless." (*McKaskle v. Wiggins* (1984) 465 U.S. 168, 177, fn. 8 [79 L.Ed.2d 122, 104 S.Ct. 944].) In contrast, regarding the denial of counsel at trial, the court has indicated that the advantages of representation by counsel over self-representation support a presumption of prejudice. (*Flanagan v. United States* (1984) 465 U.S. 259, 268 [79 L.Ed.2d 288, 104 S.Ct. 1051]; see *Gideon v. Wainwright* (1963) 372 U.S. 335, 344–345 [9 L.Ed.2d 799, 83 S.Ct. 792] [representation by counsel is necessary to ensure a fair trial in view of defendants' general inability to prepare adequate defense].)

■ Despite these differences, we conclude that the denial of self-representation at the preliminary hearing, like the denial of counsel at the preliminary hearing, is subject to harmless error analysis. As we explain below, to hold otherwise leads to a result difficult to reconcile with the right to a full defense guaranteed all defendants by the Sixth Amendment: a defendant wrongfully *denied* the advantages of counsel at the preliminary hearing would be obliged to carry a heavier burden on appeal than a defendant who wrongfully *received* these advantages. Unless both errors are subject to harmless error analysis, the defendant who seeks and is denied counsel at the preliminary hearing must show prejudice from this error, whereas a defendant who benefits from counsel at the preliminary hearing after an improper denial of self-representation—and who subsequently requests and receives counsel at trial—would be entitled to per se reversal of the judgment.

The import of *Coleman* is to remove the presumption of prejudice when the denial of counsel is confined to the preliminary hearing. In *Coleman*, the plurality opinion and the principal concurring opinion agreed that a defendant who is denied counsel at the preliminary hearing loses the advantages of counsel in that forum. (*Coleman, supra,* 399 U.S. at pp. 1–10 (plur. opn. of Brennan, J.), 11–12 (conc. opn. of Black, J.).) Nonetheless, a majority of the court held the defendant must show that this error affected the outcome of the trial under the standard of prejudice defined in *Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 87 S.Ct. 824] (*Chapman*). (*Coleman, supra,* 399 U.S. at p. 11.) Accordingly, unless a defendant improperly denied self-representation at the preliminary hearing is held to the same requirement, the defendant will be entitled to an automatic reversal of the judgment, even

though the error will typically work in his or her favor at trial. Neither the Constitution nor case law compels such an anomalous result.

We therefore conclude that the right of self-representation confined to the preliminary hearing is subject to harmless error analysis pursuant to *Chapman*. As the United States Supreme Court has indicated, *Chapman* analysis is appropriate when, as here, the defendant undergoes a trial represented by counsel of his choice. (*Rose v. Clark* (1986) 478 U.S. 570, 578 [92 L.Ed.2d 460, 106 S.Ct. 3101], overruled on other grounds in *Brecht v. Abrahamson* (1993) 507 U.S. 619, 637 [123 L.Ed.2d 353, 113 S.Ct. 1710] and *Yates v. Evatt* (1991) 500 U.S. 391, 403, fn. 8 [114 L.Ed.2d 432, 111 S.Ct. 1884] ["Harmless-error analysis thus presupposes a trial, at which the defendant, represented by counsel, may present evidence and argument before an impartial judge and jury."].) Our conclusion finds additional support in *People v. Dunkle, supra*, 36 Cal.4th 861, in which our Supreme Court held that a defendant who was wrongly denied the right to self-representation for a year during pretrial proceedings, but who subsequently expressly waived this right and proceeded to trial with counsel, was not entitled to relief on appeal, reasoning that the defendant's waiver had "cured the error." (*Id.* at pp. 907–910.)

We recognize that in *Moon v. Superior Court* (2005) 134 Cal.App.4th 1521, 1531–1534 [36 Cal.Rptr.3d 854], the court held that a defendant who was wrongfully denied the right to represent himself at the preliminary hearing, and who subsequently sought relief by writ, was not required to show prejudice from the denial. We do not disagree with *Moon*, but conclude that its holding is inapplicable to the situation before us. As the court explained in *Pompa-Ortiz*, a defendant who raises a "pretrial challenge[] of irregularities" in the preliminary hearing may properly be relieved of the burden of showing prejudice. (*Pompa-Ortiz, supra*, 27 Cal.3d at p. 529.) No such challenge was presented here. Rather than seeking relief by writ following the preliminary hearing, appellant waived his right to self-representation and elected to proceed at trial with counsel of his choice.

On the record before us, we see no prejudice under *Chapman*. Following the preliminary hearing, appellant appeared with retained counsel of his choice, who represented appellant throughout trial. Appellant has not attempted to demonstrate that his defense at trial was in any way impaired by his failure to represent himself at the preliminary hearing. It thus appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." (*Chapman, supra*, 386 U.S. at p. 24.) Accordingly, appellant is not entitled to relief on appeal due to the denial of his *Faretta* requests prior to the preliminary hearing.

B.–E.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The trial court is directed to prepare an amended abstract of judgment reflecting the changes in appellant's presentence custody credits described above (see section E., *ante*) and to forward it to the Department of Corrections. In all other respects, the judgment is affirmed.

Epstein, P. J., and Suzukawa, J., concurred.

A petition for a rehearing was denied November 8, 2007, and appellant's petition for review by the Supreme Court was denied January 3, 2008, S158276. Werdegar, J., did not participate therein.

---

*See footnote, *ante*, page 598.