Filed 8/5/16  P. v. Brown CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DERRICK LAMONT BROWN,<br><br>    Defendant and Appellant. | B265493<br><br>(Los Angeles County<br>Super. Ct. No. SA088181) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mark E. Windham, Judge.  Affirmed.

C. Matthew Missakian, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr. and Connie H. Kan, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Appellant Derrick Brown was granted the right to represent himself.  Thereafter, the Los Angeles County Sheriff's Department (the Department) conducted an administrative hearing pursuant to *Wilson v. Superior Court* (1978) 21 Cal.3d 816 (*Wilson*), and revoked his law library privileges.  The trial court reviewed the Department's administrative decision as required under *Wilson*, and affirmed the Department's decision.  Brown then relinquished his *Faretta*[1] status and proceeded with his criminal case represented by appointed counsel.  A jury convicted Brown of one count of attempted second degree robbery (count 1; Pen. Code,[2] § 664/211) and six counts of second degree robbery (counts 2-7; § 211).  The trial court found an assortment of prior felony conviction allegations to be true, and, based on the jury's verdicts and the prior conviction findings, sentenced Brown to an aggregate term of 30 years and 4 months in state prison.  On appeal, Brown asserts *Wilson* and *Faretta* errors.  We affirm.

## FACTS

### *The Crimes*

As Brown does not contest that substantial evidence supports the jury's verdicts, our discussion of the facts surrounding his crimes is limited.  It is sufficient to state that the evidence at Brown's trial established the following facts.  On May 29, 2014, Brown robbed a Chase Bank on Glendale Avenue in Glendale.  (Counts 6, 7.)  On June 18, 2014, Brown robbed a Chase Bank on National Boulevard in Los Angeles.  (Counts 2, 3.)  On June 26, 2014, Brown robbed a Chase Bank on Colorado Boulevard in Los Angeles.  (Counts 4, 5.)  On July 15, 2015, Brown and his son walked into a U.S. Bank on Pico Boulevard in Santa Monica, and Brown's son presented a robbery note to a bank employee.  When the employee pulled an alarm under his desk, Brown and his son left the bank.  (Count 1.)  Santa Monica Police Department officers detained Brown's son a few blocks from the U.S. Bank a short time after the attempted robbery.  Police drove two bank employees to the scene, where they identified Brown's son in a field line-up.

---

[1]    *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*).

[2]    All further undesignated section references are to the Penal Code.

Two weeks later, Los Angeles Police Department officers arrested Brown. After his arrest, Brown implicated himself in the crimes summarized above during taped police interviews that were played to the jury at his trial.

***The Criminal Case***

In late 2014, the People filed an information charging Brown with one count of attempted second degree robbery (count 1; § 664/211) and six counts of second degree robbery (counts 2-7; § 211; counts 2-7). Further, the information alleged that Brown suffered numerous prior serious or violent felony convictions, including a juvenile adjudication for robbery and a federal bank robbery conviction, which together and or separately fell within the purview of sections 1192.7 and 667.5, subdivisions (a) and (c); 667, subdivision (a)(1); and 1203, subdivision (e)(4). The information also alleged that he suffered a number of prior strike convictions within the meaning of section 667, subdivision (b), and section 1170.12. Further, that he suffered numerous prior felony convictions with a prison term within the meaning of section 667.5, subdivision (b).

At Brown's arraignment on December 8, 2014, the trial court granted Brown's motion to represent himself pursuant to *Faretta*.

On February 10, 2015, the Sheriff's Department served Brown with notice of an administrative hearing to determine whether his jail law library privileges would be revoked "for cause" based on a series of incidents allegedly committed by Brown while in custody. These included: using his crutches to break a window in his cell door, and roaming and refusing to obey deputies' orders while in the law library. On February 11, 2015, a Department hearing officer found that Brown's conduct posed a security threat and disrupted the ability of other inmates to use the law library, and ruled that Brown's library privileges should be revoked. On March 4, 2015, the Department filed a report with the trial court regarding the results of the administrative hearing.

The trial court held a hearing in accord with *Wilson* to review the decision of the Department to revoke Brown's pro per privileges to use the jail's law library. The court indicated that it would uphold the Department's decision, stating: "The results of [the Department's] hearing and the documentary support have been filed with this court.

3

It does show misbehavior that would in fact justify the termination of those pro per privileges."  The following exchange then transpired between the trial court and Brown:

"[The Court]:  [Mr. Brown], you have an absolute right to represent yourself.  This doesn't change that, but . . . you're in a position now where you won't have access to a law library or receive other privileges, which enhances the disadvantage I've already described. . . . I don't need to restore your counsel, but I will out of fairness to you.  I am willing to restore your right to counsel.  What would you like to do, Mr. Brown?

"[Brown]:  Is there any way I can get my pro per privileges reinstated, using the law library at the county jail? . . . It was one particular deputy that's been messing with me that wrote me up.

"[The Court]:  But you broke a window in the jail.

"[Brown]:  They didn't even punish me for that.  That was an accident. . . . I didn't even get loss of privileges or nothing for that . . . .

"[The Court]: But physical and racial threats towards jail staff --

"[Brown]:  . . . never have I ever made toward any staff. . . .

"[The Court]:  You had an administrative hearing, which upheld these charges.  So now I'm going to uphold the decision of the Sheriff's Department.  Would you like to continue to represent yourself or do you --

"[Brown]:  How can I represent myself?  I can't research case law.

"[The Court]:  Right.  So I'll restore counsel to you."

The charges against Brown were tried to a jury.  As noted above, the jury found Brown guilty of one count of attempted second degree robbery (count 1; § 664/211) and six counts of second degree robbery (counts 2-7; § 211).  The trial court thereafter found all of prior conviction allegations to be true.

The trial court sentenced Brown to an aggregate term of 30 years and 4 months in state prison, calculated as follows:  for the base term on  count 7 (robbery), the upper term of five years, doubled to ten years for a prior strike; for count 1 (attempted robbery),

4

a consecutive term of eight months (one-third of the mid-term of 24 months), doubled to 16 months for a prior strike, and for each of counts 2 through 6 (robbery), a consecutive one year term (one-third of the mid-term of three years), doubled to two years for a prior strike. The court imposed an additional five-year term for the prior serious felony conviction (§ 667, subd. (a)(1)), and a four one-year terms for prior felony convictions with a prison term (§ 667.5, subd. (b)). The court imposed ordinary fines and fees which Brown does not question on appeal.

Brown filed a timely notice of appeal.

## DISCUSSION

### I.      Revocation of Brown's Pro Per Jail Privileges

Brown contends his convictions must be reversed because the trial court erred in upholding the administrative decision of the Sheriff's Department to revoke his privileges to use the jail law library. Specifically, Brown argues the trial court "violated [his] federal due process rights by rubber stamping a defective administrative decision." We are not persuaded.

#### a. Forfeiture

We first address the argument by the People that Brown forfeited any claim of *Wilson* error by failing to assert it in the trial court. The People assert that by failing to object when the trial court indicated that it would uphold the Department's decision to revoke his pro per privileges, Brown deprived the court of the opportunity to examine whether there had been a violation of his rights. We find Brown did not forfeit all of his claims of *Wilson* error. Although the language that he used in the trial court may not have been the most precise, Brown did assert during the *Wilson* hearing that he had not committed certain acts attributed to him by the Department. Thus, Brown effectively challenged the evidence in support of the Department's decision. We are satisfied that this preserved Brown's claims of *Wilson* error for review on appeal, subject to other ancillary issues where we find forfeiture applicable under recognized principles.

5

*b. Governing Law*

Turning to Brown's challenges to the trial court's decision to uphold the Department's decision of the Sheriff's Department to revoke Brown's privilege to use the jail law library, we find no reversible error. Under *Wilson, supra*, 21 Cal.3d 816, a jailer can restrict or terminate a defendant's pro per jail privileges "for cause," meaning for a "violation of jail rules and/or a demonstrable necessity for administrative segregation of a defendant who would otherwise constitute a threat to jail security . . . ." (*Id*. at pp. 821-822.) These privileges can be restricted or terminated only after "notice" and a "jail administrative evidentiary hearing." (*Id*. at p. 822.) Due process does not require that a jail privilege hearing be held in the trial court, "as long as provision is made for court review of the matter and for the defendant to appear and be heard at the time of such court review . . . ." (*Ibid*.) When a jailhouse administrative hearing is conducted, "the hearing body should send its decision and report, including a summary or digest of the evidence on both sides, to the defendant and to the court for court review of the matter," and "[t]he defendant should be given an opportunity to appear at the time of the court's determination" in order to "allow him an opportunity to voice any objection he has regarding the administrative proceeding and decision." (*Id*. at pp. 827-828.) When the court decides to uphold the administrative decision, the court should then inquire of the defendant whether, in light of the change in pro per privileges, he or she still wants to proceed in pro per or then wants to have counsel appointed to represent him or her. (*Id*. at p. 828.)

*c. Analysis*

The record here demonstrates that all of the steps contemplated under *Wilson* were followed appropriately. The Department served Brown with notice, and conducted an administrative evidentiary hearing, issued a decision, and the trial court reviewed the decision at a court hearing attended by Brown. When the court decided to uphold the Department's administrative decision, the court correctly inquired whether Brown wanted to continue representing himself. These steps satisfied the framework for *Wilson* disputes.

6

This brings us to Brown's challenge to the protocols employed by the Sheriff's Department for the administrative hearing conducted to decide whether to revoke his pro per privileges. Here, Brown contends that his federal constitutional right to due process was violated because the administrative decision to revoke his library privileges "was not actually made by an impartial body." Brown implicitly argues the trial court's ensuing decision to uphold the Sheriff's Department administrative decision perpetuated the due process violation inherent in the department's protocols. Brown's arguments do not persuade us to find that the *Wilson* administrative hearing conducted by Sheriff's Department was constitutionally defective in this case.

Brown correctly tells us the record shows that Custody Assistant Donald Hinton "presented the Sheriff's Department's case," and that "Lieutenant Bottomley . . . acted as the hearing officer" who had the task to decide whether or not to revoke Brown's pro per privileges. On appeal, Brown argues that the record establishes something more, namely, that Custody Assistant Hinton "exercised the dominant control" over the administrative hearing, and that this control "nullified Lieutenant Bottomley's status as an impartial factfinder," thus rendering his final decision "an inevitable, empty formality" that does not comport with due process. Brown asserts "it is laughable to believe that [Lieutenant] Bottomley made an impartial assessment of the evidence and reached an independent, reasoned conclusion there was good cause to . . . terminate [Brown]'s . . . [library] privileges."

Neither Brown nor the People cite any case establishing any rules governing *who* may act as the hearing officer at a *Wilson* jailhouse administrative hearing, or otherwise establishing any specific rules of procedure governing the safeguards that are required so that a *Wilson* jailhouse hearing comports with due process. This said, we find no due process error in connection with Brown's *Wilson* jailhouse administrative hearing. A fair reading of *Wilson* demonstrates that it contemplates that an administrative hearing on an inmate's pro per privileges is to be conducted in the jailhouse setting. *Wilson* expressly states that due process does not require that such a hearing be held in court, "so as long as provision is made for court review of the matter and for the defendant to appear and be

heard at the time of such court review . . . ." (*Wilson, supra*, 21 Cal.3d at p. 822.) Accordingly, we find no due process error in having a jail official, here Lieutenant Bottomley, act as the hearing officer for a *Wilson* jailhouse administrative hearing on pro per privileges.

Brown next contends that Lieutenant Bottomley was not shown to be qualified to act as the hearing officer at the administrative hearing because the record does not show that the lieutenant was familiar with the operation and rules of the pro per library. Brown's argument asks: "How could Bottomley have made a neutral determination about the risk posed by [Brown] at the law library if [Bottomley was not] familiar with its operation and rules?" On this issue, we find Brown has forfeited his claim. When Lieutenant Bottomley's administrative decision was reviewed in the trial court, Brown did not object to the lieutenant's competence to act as hearing officer. By failing to object, the issue was not developed in the trial court, and the court and the parties were deprived of an opportunity to address the issue and to present their positions on the issue, including making a responsive showing . In such a situation, forfeiture is appropriate. (See, e.g., *People v. Simon* (2001) 25 Cal.4th 1082, 1103 [explaining forfeiture principles generally]; *People v. Ringo* (2005) 134 Cal.App.4th 870, 876 [pro per defendant's claim that he was denied access to law library for trial preparation forfeited as he did not raise issue unil mid-trial].) Absent an objection from Brown in the trial court, we are satisfied that the court could accept that a lieutenant employed in the jail would have sufficient understanding of jail operations to act as a hearing officer for a *Wilson* administrative hearing.

Brown next argues that a jail employee or agent who makes the evidentiary presentation on a pro per privilege dispute to the hearing officer at a *Wilson* administrative hearing must not be the same person who prepares the summary of evidence and report which is forwarded to the trial court for review, which in Brown's case was Custody Assistant Hinton. Brown maintains that, if the same person both presents the evidence, and prepares the summary of the evidence and report, then there is a risk that the latter may be biased in favor of the former presentation, meaning the trial

8

court gets a skewed view of the *Wilson* administrative hearing. Again, we note that neither Brown nor the People have cited a case for us directly on this contention.

Brown argues that the risk of bias is demonstrated in his case by the fact that the part of the hearing officer's report addressing "The Sheriff's Department's Contentions" is roughly two typed pages in length, whereas the section which addresses "The Defendant's Contentions" is only four sentences long. Further, Brown asserts that the language summarizing the Sheriff Department's contentions is written in a "dramatic" tone. Forthrightly, Brown acknowledges that the "exact extent of the slant and bias in Hinton's account is a matter of speculation." As he recognizes: "[I]t is conceivable that [Brown] offered only the vaguest and briefest of denials, and thus that a fair summary of [his] contentions required approximately one-tenth as much verbiage as a fair summary of the Sheriff's contentions."

We discern no deprivation of due process. The content of "The Defendant's Contentions" set forth in Custody Assistant Hinton's report — namely, Brown's denials of the Sheriff's Department's contentions of jailhouse wrongdoing, his claim that breaking the jail cell window was an accident, and his accusation that deputies were "out to get him" — was consistent with Brown's statements to the trial court during the court's review of the *Wilson* hearing and administrative decision to revoke his pro per privileges to use the jail library. This supports a conclusion that Custody Assistant Hinton accurately summarized Brown's contentions. Thus, the trial court was given a good grasp of the competing contentions, and we find no due process problem in the court's review of the facts in support of the Department's decision to revoke Brown's privileges to use the jail law library. Although it may be more in the spirit of *Wilson* that the Hearing Officer (here Lieutenant Bottomley) be the person who drafts the summary of evidence and report to the court, nothing in *Wilson* expressly compels that procedure. We need not to decide the question for the record reveals that both Lieutenant Bottomley and the trial court undertook their own review of the evidence and that Brown had an ample opportunity to contest the findings in the trial court.

9

This leaves only the matter of the trial court's review.  Here, Brown argues the court simply "rubber-stamped" the Sheriff's Department's administrative decision to revoke his law library privileges.  We disagree.  The mere fact that the court ruled against Brown does not demonstrate that the court shirked its judicial responsibilities.

Having found no error in the administrative hearing and trial court review processes, we do not address the additional issue of whether Brown was prejudiced.

## II.  The Alleged Revocation of *Faretta* Rights

Brown claims his convictions must be reversed because the trial court erred when it "terminated" his *Faretta* status "without his request or acquiescence."  We disagree.

We have already noted that when the court decides to uphold the administrative decision to revoke law library privileges, the court must then inquire of the defendant whether he still wants to proceed in pro per or prefers to have counsel appointed to represent him.  (*Wilson*, *supra*, at p. 828.)  The court here did so.  Brown argues he "never said he no longer wanted to represent himself."  He argues his comments, "which at most revealed confusion about the distinction between pro per privileges and pro per status in court, could not have formed the basis for a reasonable conclusion he had abandoned his desire for self-representation."  We find no error.

The critical exchange between the trial court and Brown proceeded as follows:
"[The Court]:  [Mr. Brown], you have an absolute right to represent yourself.  This doesn't change that, but . . . you're in a position now where you won't have access to a law library or receive other privileges, which enhances the disadvantage I've already described. . . . I don't need to restore your counsel, but I will out of fairness to you.  I am willing to restore your right to counsel.  What would you like to do, Mr. Brown?
"[¶] . . . [¶]
"[The Court]:  You had an administrative hearing, which upheld these charges.  So now I'm going to uphold the decision of the Sheriff's Department.  Would you like to continue to represent yourself or do you --
"[Brown]:  How can I represent myself?  I can't research case law.

10

"[The Court]: Right. So I'll restore counsel to you. . . ."

The trial court plainly understood Brown's comment, "How can I represent myself? I can't research case law," to amount to a statement relinquishing his *Faretta* status, and we have the same understanding. This seems particularly correct in light of the fact that, after the trial court stated that it was restoring Brown's counsel, Brown did not object. As Brown recognizes in his opening brief, a waiver of *Faretta* status may be found if it reasonably appears to a trial court that the defendant abandoned his or her initial request for self-representation. He cites *Brown v. Wainwright* (5th Cir. 1982) 665 F.2d 607, 611. This is exactly what occurred here.

Brown likens his case to *People v. Butler* (2009) 47 Cal.4th 814 (*Butler*), in which the Supreme Court reversed a murder conviction upon finding the trial court erred in revoking the defendant's *Faretta* status. However, Brown's case is not like *Butler*. In *Butler*, a trial court granted the defendant's request for *Faretta* status in a murder case. After the *Faretta* order, the county counsel filed a motion to "restrict" the defendant's pro per privileges in jail based on claimed transgressions that created a security risk to inmates and staff. (*Butler, supra*, 47 Cal.4th at pp. 818-819.) The trial court held a hearing on the motion, and revoked the defendant's pro per privileges. With the defendant's agreement, it also revoked the defendant's *Faretta* status. (*Butler,* at p. 819.) The issue of the defendant's pro per privileges was later revisited, but they were not restored. Eventually, the defendant made motion pursuant to *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*) to replace his counsel, which was denied. (*Butler,* at p. 821.) At a subsequent hearing, the defendant made a renewed motion for *Faretta* status, which the trial court granted. (*Butler,* at p. 823.) At an ensuing hearing, after discussions with the defendant and standby counsel about trial preparation and discovery problems, the court unilaterally revoked the defendant's *Faretta* status and reappointed counsel to represent him. (*Butler,* at p. 823.) Ultimately, a jury convicted the defendant and he was sentenced to death. (*Id*. at p. 824.) The Supreme Court reversed the defendant's conviction upon finding a denial of his constitutional right to represent himself. In reversing, the Supreme Court recognized that it was reasonable for the trial court to have believed it "'just [did

11

not] make sense'" to allow the defendant to represent himself given the trial preparation problems he was experiencing, but that this did not provide a lawful basis to revoke *Faretta* status that the defendant had wanted and which he had knowingly decided to undertake. (*Butler,* at p. 827.)

*Butler* is not helpful to Brown here because the trial court did not unilaterally revoke his *Faretta* status as occurred in *Butler*. On the contrary, the record in Brown's current case shows he voluntarily relinquished his *Faretta* status.

## III. The Alleged Second *Faretta* Request

Last, Brown contends his convictions must be reversed because the trial court erred "when it refused to grant his renewed *Faretta* request." We disagree.

### *The Setting*

As noted above, Brown relinquished his *Faretta* status at the trial court's hearing after reviewing the *Wilson* jailhouse administrative decision of the Sheriff's Department to revoke Brown's privilege to use the jail law library. At a hearing one month later, Brown's appointed bar panel lawyer advised the court that Brown was "not happy with the present [situation] regarding his representation." When the court called on Brown to explain, he stated the following:

> "[W]hen they had the *Wilson* hearing [at the jail], they kind of left it up to the court. And you said that you wasn't going to [change the decision of the Sheriff's Department to revoke my pro per privileges to use the jail's law library] at that time. But since then, the deputy that I had the misunderstanding with at the . . . jail, he's been reassigned to somewhere else. So he's no longer an issue as far as me being able to get out of my cell and go to the law library . . . . I would like to have my pro per status reinstated. If not, a *Marsden* hearing and perhaps you can give me a state appointed attorney because I did have a discussion with my attorney. He said that the case is not triable as far as he's concerned, and he said it's hard to take the case serious . . . ."

12

At this point, the court interrupted: "If you're making a *Marsden* motion, we'll do that outside the presence of everyone else." Brown then continued complaining about his lawyer and about the court, including a comment that he had asked his lawyer "to file a 170.6 motion." Brown stated he "[did not] feel comfortable having [his case] here, . . . because of Bruce Schweiger's attachment to [the] court . . . ."[3] Brown stated: "I don't believe I can get a fair trial here." There were also discussions about a "deal" offered by the prosecution that Brown felt was "not a deal to [him]."

After listening to Brown's complaints and concerns, the trial court stated: "The court upheld the termination of you privileges in jail. The *Faretta* here is ambiguous because its connected with an idea about privileges and about a dissatisfaction with the lawyer or matters of strategy, not anything about competence. . . . Do you want to tell me more about your lawyer's performance? If there's anything else, then I'll have a closed hearing. But if there's nothing else besides what you've already went ahead and told me, that's not sufficient." Brown responded with still further complaints, including comments that he "felt the information was defective," and that he wanted to "challenge the information through demurrer," but that his lawyer "just don't see it that way." After listening to Brown's further statements, the court ruled: "[T]he *Faretta* is denied. The *Marsden* is denied."

### The Governing Legal Principles

In *Faretta*, the United States Supreme Court ruled that the Sixth Amendment's language guaranteeing a criminal defendant the right to assistance of counsel, "when naturally read, thus implies a right of self-representation." (*Faretta, supra*, 422 U.S. at p. 821.) A defendant's request for self-representation must be "unequivocal." (*People v. Valdez* (2004) 32 Cal.4th 73, 97-98, citing *Faretta, supra*, 422 U.S. at p. 835; and see also *People v. Marshall* (1997) 15 Cal.4th 1, 22-23.) In determining whether a defendant is making an unequivocal request for *Faretta* status, a trial court must decide whether the defendant truly desires to represent himself or herself; an insincere request or one that is

---

[3] Brown may have been referring to an attorney employed in the Public Defender's Office, but this is not certain from reading his comments.

made under the cloud of emotion may be denied.  (*People v. Tena* (2007) 156 Cal.App.4th 598, 607 (*Tena*).)  Because this trial court inquiry is intended to protect the right to counsel, the court must indulge every reasonable inference against waiver of the right to counsel.  (*People v. Marshall, supra*, 15 Cal.4th at p. 20; *Tena, supra*, 156 Cal.App.4th at p. 604.)  In short, "'"the right of self-representation is waived unless defendants articulately and unmistakably demand to proceed pro se."'"  (*People v. Stanley* (2006) 39 Cal.4th 913, 932.)

On appeal, the issue of whether the defendant unequivocally invoked the right to self-representation is examined de novo.  (*People v. Dent* (2003) 30 Cal.4th 213, 218.)

*Analysis*

We find no *Faretta* error.  The analysis of the *Faretta* issue by our colleagues in Division Four of our court in *Tena, supra*, 156 Cal.App.4th 598 guides our decision. In *Tena*, the defendant complained to a commissioner at a very early case hearing that his court-appointed attorney had declined to subpoena several witnesses for his upcoming preliminary hearing.  During a series of exchanges with the commissioner, the defendant stated, "'Sir, I want to go pro per.'" and the commissioner answered, "You can't." (*Tena*, *supra*, 156 Cal.App.4th at p. 605.)  A few weeks later, immediately before the start of his preliminary hearing, the defendant requested a *Marsden* hearing.  During the hearing, the defendant stated that he wanted to "fire" his court-appointed attorney and hire a private attorney who was then in trial and would be available in about two weeks. Further, he repeated his complaint that witnesses had not been subpoenaed for the preliminary hearing.  (*Tena,* at pp. 605-606.)  When the trial court denied the *Marsden* motion and indicated the defendant could hire a private attorney after the preliminary hearing transpired, the defendant became agitated and requested self-representation, which the court denied.  (*Tena,* at p. 606.)  The defendant did not renew his request to represent himself for the remainder of his criminal case.  (*Ibid*.)  Ultimately, a jury convicted the defendant of corporal injury to the mother of his child.  (*Id*. at p. 601.) On appeal, the defendant argued that reversal of his conviction was required under *Faretta*.  Our colleagues in Division Four affirmed the judgment, concluding that that the

defendant's requests for self-representation were equivocal, "impulsive reactions to his frustrated attempts to secure an attorney who would subpoena the witnesses he desired . . . ." (*Tena,* at pp. 607-609.)

Here, Brown's renewed *Faretta* request was similarly equivocal because it was plainly motivated by his frustration with the course of his case. The *Faretta* request was made in virtually the same breath as request for a *Marsden* hearing. In the same context, Brown stated he wanted a new lawyer because his appointed lawyer had allegedly said that Brown's case was "not triable." Further, Brown made comments about wanting to file a section 170.6 motion, and about feeling that he could not get a fair trial from the trial judge. Brown additionally complained about communication problems with his lawyer. The trial court expressly stated that it found Brown's *Faretta* to be "ambiguous" because it was connected with the issue of his out-of-court privileges and about his dissatisfaction with his lawyer or matters of strategy. Brown's comments, taken as a whole, establish that his primary concern was getting new appointed counsel, rather than exercising his right to self-representation. According, we find the trial court properly denied his *Faretta* request as equivocal and ambiguous.

## DISPOSITION

The judgment is affirmed.


BIGELOW, P.J.

We concur:


RUBIN, J.


FLIER, J.

15