Filed 6/18/24  P. v. Scott CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br>v.<br>RICHARD SCOTT,<br><br>        Defendant and Appellant. | A165540<br><br>(Alameda County<br>Super. Ct. No. 21CR012387) |

Defendant Richard Scott was convicted by a jury of three counts of robbery (Pen. Code, § 211).[1]  On appeal, defendant contends:  (1) the trial court erred in denying his motion to represent himself; (2) the court failed to obtain a personal and express waiver of his right to a jury trial on the aggravating circumstances; and (3) his trial attorney was ineffective in failing to object to the court's findings regarding aggravating and mitigating circumstances.  We affirm.

---

[1]     All further undesignated statutory references are to the Penal Code.

1

## FACTUAL AND PROCEDURAL BACKGROUND

### A. The Charges

In October 2021, the People filed a complaint against defendant (hereafter case no. 012387) alleging two counts of second degree robbery occurring on or about September 23, 2021. The People further alleged defendant had four "strike" priors and four prior serious felony convictions (§ 667, subd. (a)(1)).

Days later, the People filed another complaint against defendant (hereafter case no. 012543) alleging two counts of second degree robbery occurring on or about September 28 and 30, 2021. The People again alleged defendant had numerous "strike" priors and prior serious felony convictions. Early on in both cases, and through sentencing, defendant was represented by a Deputy Public Defender.

### B. The 2021 *Marsden* and *Faretta* Motions

#### 1. *The preliminary hearing in case no. 012387*

In November 2021, the day before the preliminary hearing in case no. 012387, defendant asked for a *Marsden* hearing (*People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*)). The trial court continued the matter. The next day, after denying the *Marsden* motion, the court indicated that defendant had been given a "*Faretta* packet" since he was considering making motion to represent himself (*Faretta v. California* (1975) 422 U.S. 806 (*Faretta*)). (Italics added.) The court then asked the defense if the preliminary hearing would proceed. When defense counsel announced she was ready and had no motions other than to exclude potential witnesses, defendant asked for new counsel or, alternatively, to represent himself because defense counsel was not filing certain motions.

The trial court explained defendant needed to fill out the *Faretta* paperwork before it would consider the motion. The court suggested he do so and return in the afternoon, but the prosecutor indicated she was unavailable later. Thereafter the preliminary hearing proceeded, and the court held defendant to answer.

### 2. *The preliminary hearing in case no. 012543*

On December 7, 2021, in the midst of the preliminary hearing in case no. 012543, defendant made another *Marsden* motion and another *Faretta* request. In sum, he complained he had not received all of the records and evidence in his case, defense counsel had not visited him, and she waived his appearance at a December 1, 2021 hearing against his wishes. Defense counsel explained that the December 1 hearing was the arraignment in case no. 012387, and that she told defendant he would not physically appear but instead would appear via video due to COVID-19 protocols. She also reported having a video visit with defendant at jail, and that video visits were the only reliable way to see clients at the jail where inmates were often quarantined or unavailable. Counsel did not believe there was a conflict such that she could not competently represent defendant.

The trial court denied the *Marsden* motion, concluding there was no showing that defense counsel performed inadequately or that an irreconcilable conflict existed. The court declined to consider the *Faretta* request, stating defendant could raise it at his next court date. At the end of the preliminary hearing, the court held defendant to answer. The People moved to consolidate case no. 012387 with case no. 012543 in January 2022.

### C. **The February 2022 *Marsden* and *Faretta* Motions**

At a hearing on February 2, 2022, the parties discussed a plea offer to resolve both cases. The prosecutor summarized the evidence, which included

3

surveillance videos purportedly showing defendant committing the robberies in distinct attire and in the same car he was arrested in, and the attire and other items used during the robberies were found in that car. Defendant strongly disagreed with the prosecutor's characterization of the evidence and made another *Marsden* motion. When the prosecutor asserted she would withdraw the plea offer that morning, the trial court ordered the prosecutor to keep it open for another day so defendant could make an informed decision and not one "based on emotion." The court indicated that if defendant still wanted a *Marsden* hearing, it would be conducted the next day.

The following day (February 3), the defense made a counteroffer. When the prosecutor rejected it, defendant renewed his *Marsden* motion. During an in camera hearing, defendant complained that his counsel did not file motions he asked her to; did not ask questions he wanted her to at the preliminary hearing; had not visited or communicated with him; and told him he should plead guilty because he would be found guilty. Defendant asked the court to remove counsel "or I'm willing to go pro per." At the court's request, defense counsel addressed the length and conduct of her representation of defendant, and explained that numerous meetings with defendant were cancelled because he was in quarantine. Counsel said she gave defendant her cell phone number but received no calls from him. The court ultimately denied the *Marsden* motion. Crediting defense counsel, the court found that she properly represented defendant and that there was no breakdown in the attorney-client relationship.

As the trial court attempted to re-open the February 3 proceedings, defendant sought to leave the courtroom, stating: "I'm not going to sit here to fight for my life for someone who told me she does not want to work with me and I'm guilty. [¶] . . . [¶] You can go about how you want to go about it. I

4

respect your courtroom.  Have a nice day."  Thereafter, defendant ignored the court's attempts to speak with him, saying, "I'm not hearing nothing," "God bless," and "Have a nice day."  Pressed to answer whether he wanted to absent himself from trial, defendant said he wanted to take the plea offer because he did not want to be forced to proceed with defense counsel.  The court made clear that no one was forcing defendant to take the plea offer, and he could proceed to a jury trial.

At that point, defendant requested a mental health evaluation, stating: "I need to talk to some doctors.  [¶] . . .  [¶] I'm depressed.  I'm experiencing anxiety right now dealing with this situation.  I have a long history of mental health disabilities and thought process.  I was just recently released from John George.  I'm in the middle of—and I just started my medication. [¶] This lady . . . is lying in front of the Court.  You don't believe me.  Y'all have worked together.  You lunch together.  Y'all friends.  I want to go and get a mental health evaluation before I speak to the District Attorney before my offer is taken away and before I proceed.  I don't want to proceed—I will not proceed with her.  [¶] . . . [S]he just lied to the Court yesterday about coming to visit me.  She's visited me once being in jail.  I've been in jail 5 months.  I've only seen her once on the video, and I've only seen her here due to the fact that you and another judge told her to go upstairs and visit me. [¶] She does not want to work on my case and that is unfair to me, and I'm not going to sit here knowing I'm facing 25 years and go to trial with someone who hasn't even called any witnesses on my behalf and who has not filed any motions for me."

The trial court sought clarification whether defendant wanted to take the plea offer or go to trial, and again emphasized the court was not forcing him to do anything.  Defendant responded: "I would like to go pro per, and I

5

feel that if I go to trial with a lawyer that's willing to work with me, that I will not lose this trial. . . . [¶] . . . [¶] [B]ecause I was not identified, but she feels that I'm guilty. And there's no way that she can help me win the case if she told me face-to-face that I'm guilty, and she just told me that in court in front of this District Attorney. She just told me that she's going to lose. She told you yesterday she didn't have nothing to counteroffer what the District Attorney offered me. She don't even know how to negotiate a deal. I asked for four years. That's one year off. That is fair. That's not hurting nobody. Have done nothing to have been identified other than a preliminary [*sic*]."

The trial court asked defendant whether he had been to law school, asked witnesses questions, argued motions, or picked a jury. (Italics added.) Defendant responded largely in the negative, but said he helped a prior attorney representing him to pick a jury. The court then indicated it would not allow defendant to proceed pro se: "Now, part of my job is to save you from yourself . . . . [¶] So my job is to give you the pros and cons of you not listening to your attorney. That's what my job is. All right? [¶] You say you want three. They're offering five. What you could get is 25 . . . . I'm not trying to be mean here or rude, okay? But you don't understand the significance of your actions, okay? You don't understand the Evidence Code, all right? A lot of people come in here and they say they're not calling my witnesses. They're not doing this. They're not doing that. There's a thing called the Evidence Code that prevents people . . . from presenting certain evidence. [¶] There has to be relevance. It can't be hearsay. There's a number of things that go into presenting a trial or defending someone at a trial, and you don't know any of that and . . . I'm not saying you can't do it. I'm not saying that. But I'm saying you're not in the position to do it, and . . . I've granted people pro per status before. But from what I've heard, that

6

would be the wrong thing to do in your case, and I'm not going to do that. [¶] If I give you pro per status and you're in front of this jury and they give you 25, I've got to live with that because I let it happen. I'm not going to let it happen . . . ."

The trial court again asked defendant if he wanted to accept the plea offer, and defendant replied, "if the Court is going to order me to go through my trial with [defense counsel] here, I will not proceed and will not attend court. I will attend court with any other attorney or go pro per or I'm willing to counter with the District Attorney to see if they'll give me four years." The court clarified it was denying the *Faretta* motion, and defendant said, "All right. So maybe the District Attorney would be willing to work with me on four years." The court explained the prosecutor rejected that counteroffer, so the matter would proceed to trial.

After re-opening the courtroom, defense counsel expressed a doubt as to defendant's competence to stand trial, and the court suspended the proceedings (§ 1368). Weeks later, after defendant's examination by a doctor, the court reinstated the proceedings.

### C. The April and May 2022 *Marsden* and *Faretta* Motions

At a pre-trial hearing on April 21, 2022, defendant made another *Marsden* motion reiterating many of the previous complaints. The trial court heard from defense counsel as to her criminal law experience, her conduct in representing defendant, and her responses to his allegations. The court denied the *Marsden* motion, finding counsel was properly representing defendant. The court consolidated the cases for trial, and the People filed a consolidated information alleging, in part, four robbery counts, four strike priors and four prior serous felony convictions, and aggravating

7

circumstances related to defendant's criminal history (Cal. Rules of Court, rule 4.421(b)(2)–(5)[2]).

On April 27, 2022, the first day of jury selection, defendant made a *Marsden* motion, which the court denied. Defendant also made a *Faretta* motion that the court denied as untimely. Later, in the midst of trial, the court denied yet another *Marsden* motion.

### D. Verdict and Sentence

The jury found defendant guilty of three counts of robbery. The trial court declared a mistrial on the remaining count because the jury could not reach a decision on that count. In a bifurcated bench trial, the court found true the prior conviction allegations and the alleged aggravating circumstances (rule 4.421(b)(2)–(5)). Defense counsel filed a sentencing memorandum asking the court to strike or dismiss the prior strikes pursuant to section 1385 and *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497. The court ultimately sentenced defendant to a total of 15 years in prison. This appeal followed.

### DISCUSSION

### A. Denial of *Faretta* Motion

Defendant argues the trial court erred in denying his February 2022 *Faretta* motion, thereby violating his rights under the Sixth and Fourteenth Amendments to the United States Constitution. He argues that he was competent when making the request; that his request was unequivocal, knowing, and voluntary; and that the error is reversible per se. The People counter that the motion was properly denied because it was equivocal. We agree with the People.

---

[2] All further rule references are to the California Rules of Court unless otherwise indicated.

8

*1. Applicable Law*

" 'A criminal defendant has a right to represent himself at trial under the Sixth Amendment to the United States Constitution. [Citations.] A trial court must grant a defendant's request for self-representation if three conditions are met. First, the defendant must be mentally competent, and must make his request knowingly and intelligently, having been apprised of the dangers of self-representation. [Citations.] Second, he must make his request unequivocally. [Citations.] Third, he must make his request within a reasonable time before trial.' " (*People v. Stanley* (2006) 39 Cal.4th 913, 931–932.)

"The court faced with a motion for self-representation should evaluate not only whether the defendant has stated the motion clearly, but also the defendant's conduct and other words. Because *the court should draw every reasonable inference against waiver of the right to counsel*, the defendant's conduct or words reflecting ambivalence about self-representation may support the court's decision to deny the defendant's motion. A motion for self-representation made in passing anger or frustration, an ambivalent motion, or one made for the purpose of delay or to frustrate the orderly administration of justice may be denied." (*People v. Marshall* (1997) 15 Cal.4th 1, 23 (*Marshall*), italics added; see, e.g., *People v. Tena* (2007) 156 Cal.App.4th 598, 607 (*Tena*), and cases cited ["under some circumstances, remarks facially resembling requests for self-representation" may be deemed "equivocal, insincere, or the transitory product of emotion"].) In determining whether a defendant unequivocally invoked the right to self-representation, we are "not bound by the trial court's apparent understanding that the defendant was making a motion for self-representation." (*People v. Barnett* (1998) 17 Cal.4th 1044, 1087 (*Barnett*).)

9

Case law is instructive. In *People v. Valdez* (2004) 32 Cal.4th 73 (*Valdez*), the defendant made his alleged *Faretta* motion immediately after the denial of a *Marsden* motion, stating " 'Well, in this matter I am—my constitutional rights if I want to go pro. per. on this case I could do that.' " (*Valdez*, at p. 98.) The Supreme Court held that this was not "an articulate and unmistakable demand for self-representation" and that "[d]efendant's use of the conditional 'if' shows that his statement was ambivalent and equivocal." (*Id.* at p. 99.) More relevant to the present case, the court indicated the fact that the defendant made a single reference to self-representation immediately after the denial of his *Marsden* motion reflected that he was not making an unequivocal *Faretta* motion. (*Valdez*, at p. 99.)

In *People v. Scott* (2001) 91 Cal.App.4th 1197, the defendant made a *Marsden* motion four days before trial was set to begin. (*Scott*, at p. 1204.) Immediately after the denial of that motion, the defendant moved to represent himself. (*Ibid.*) The court asked the defendant if he was sure he wanted to proceed pro se. The defendant replied, " 'Yes. I do, judge. I don't want [appointed counsel] to represent me.' " (*Id.* at p. 1205.) The defendant also said " '[I]f I can't get a [new] state appointed attorney, then I represent myself,' and, 'For the record, I don't want this attorney representing me. You the court is coercing me.' " (*Ibid.*) The trial court denied the *Faretta* request as untimely. (*Scott*, at p. 1205.) The Court of Appeal affirmed, concluding the request was both untimely and equivocal. (*Ibid.*) On the latter ground, the court explained "it appeared [the defendant] made the *Faretta* motion out of frustration at having his *Marsden* motion denied, rather than from a genuine desire to represent himself." (*Scott*, at p. 1206.)

In *Tena*, at a pre-preliminary hearing, defense counsel indicated another public defender would likely handle the case, but asked the court to

set the preliminary hearing. (*Tena, supra*, 156 Cal.App.4th at p. 605.) The defendant complained defense counsel declined to subpoena witnesses for the preliminary hearing. When the court told the defendant to discuss the matter with the attorney who would ultimately be assigned to his case, the defendant said "I want to go pro per." The court responded defendant could not and there was no further discussion of the matter, though the defendant continued to ask the court if his witnesses would be subpoenaed. (*Ibid.*) At the preliminary hearing, defendant made a *Marsden* motion, stating he wanted to be represented by a private attorney because his appointed attorney refused to subpoena various witnesses. (*Tena*, at pp. 605–606.) After the court denied the *Marsden* motion, the defendant "became agitated and threatened to walk out of the courtroom, stating he was 'getting railroaded.'" The court took a recess, and afterwards defendant asked, "Can I go pro per, sir? Your Honor, may I go pro per?" The court indicated the request was untimely and the defendant did not renew it during the underlying proceedings, including trial, where he was represented by private counsel. (*Tena*, at p. 606.)

The *Tena* court concluded the defendant's purported *Faretta* requests were equivocal, i.e., they were "impulsive reactions to his frustrated attempts to secure an attorney who would subpoena the witnesses that he desired." (*Tena, supra*, 156 Cal.App.4th at p. 608.) The court noted defendant complained about the issue of subpoenaing witnesses at the pre-preliminary hearing where he requested to represent himself, and he returned to the topic of subpoenaing witnesses after the denial of his request but did not press for self-representation. (*Id.* at p. 609.) The defendant's subsequent conduct in engaging a private attorney and raising a *Marsden* motion showed he "sought an attorney amenable to his defense strategy, rather than self-

11

representation." And at the preliminary hearing, the defendant only referred to self-representation after the denial of his *Marsden* motion, to which he had an "emotional response." (*Tena*, at p. 609.) Thereafter, the defendant did not renew his request for self-representation and proceeded to trial with a private attorney. (*Ibid.*)

### 2. Analysis

Here, we conclude defendant's request for self-representation at the February 3 hearing was equivocal and born of frustration over the prosecutor's rejection of his counteroffer, defendant's perception of his counsel's ineffectiveness, and the trial court's denial of his *Marsden* motion. This is evident from both defendant's words and conduct.

We reiterate here some of the more pertinent facts. The day before the February 3 hearing, after the parties discussed the prosecution's plea offer, defendant strongly disputed the prosecutor's characterization of the evidence. Defendant then made a *Marsden* motion, after which the trial court ordered the prosecutor to keep her plea offer open for one more day, stating it did not want defendant to make a decision "based on emotion." The next day, defendant said he had a counteroffer and would proceed to trial if that was rejected. After the prosecutor rejected the counteroffer, defendant renewed his *Marsden* motion, stating, "I wanted them to accept my counteroffer." At the closed hearing, defendant set out his problems with defense counsel, saying he would be "railroaded" and could not have a fair trial with counsel. Defendant asked the court to remove counsel or he would be "willing to go pro per." The court denied the *Marsden* motion.

When the court attempted to re-open the proceedings, defendant—clearly frustrated—tried to leave, stating, "I'd like to be excused," and "You can go about how you want to go about it. I respect your courtroom. Have a

nice day." He ignored the court, stating things like "Have a nice day" and "God bless." He indicated that he wanted "to take the deal based on the simple fact that I cannot fire my attorney because I'm not going to work with her, and nobody is going to force me to do anything. [¶] . . . [¶] And I can guarantee that. [¶] . . . [¶] Because I'm going to stand up for my life and my rights. [¶] . . . [¶] I'm a citizen of the United States of America. I don't care whatever else. I am a citizen and a taxpayer, and I have a right to stand up for my rights." When the court made clear that no one was forcing him to take the plea offer, defendant repeatedly asked for a mental health evaluation and said he was experiencing anxiety, then accused the court of being friends with defense counsel.

After this colloquy, during which defendant clearly was emotional and agitated, the trial court again sought clarification regarding whether defendant wanted to go to trial. Defendant responded, "I would like to go pro per, and I feel that if I go to trial with a lawyer that's willing to work with me, that I will not lose this trial." Immediately after this, defendant continued at some length complaining about defense counsel and the rejection of his counteroffer, saying "I asked for four years. That's one year off. That is fair. That's not hurting nobody." When the court indicated it was not going to let defendant represent himself and again sought to clarify whether defendant wanted to go to trial, defendant responded, "My answer is, if the Court is going to order me to go through my trial with [defense counsel] here, I will not proceed and will not attend court. I will attend court with any other attorney or go pro per or I'm willing to counter with the District Attorney to see if they'll give me four years." The court made clear it was denying his request to represent himself, and then defendant said, "So maybe the District Attorney would be willing to work with me on four years."

13

Looking first at defendant's words, the initial statement by defendant that he was "willing" to represent himself falls short of "an articulate and unmistakable demand for self-representation." (*Valdez*, *supra*, 32 Cal.4th at p. 99.) Defendant subsequently made a somewhat more articulate *Faretta* request when he said, "I would like to go pro per, and I feel that if I go to trial with a lawyer that's willing to work with me, that I will not lose this trial." But this too seems equivocal given his simultaneous remark that he would not lose his case if he were appointed different counsel.

Beyond defendant's words, the record shows that defendant made the requests in seeming disbelief that both his counteroffer and *Marsden* motion had been denied. The record also reflects that an emotionally charged colloquy ensued in which defendant repeatedly asked for a mental health evaluation. These circumstances lend further support to the conclusion that defendant was not making an unequivocal demand to proceed pro se, but instead was reacting emotionally and out of frustration.

Finally, our Supreme Court recognizes that "subsequent events and circumstances may shed light on the question whether a defendant's interjection of a brief and impulsive request to proceed pro se actually represents a knowing, voluntary, and unequivocal request for self-representation or, instead, a temporary reaction to an adverse circumstance." (*Marshall*, *supra*, 15 Cal.4th at p. 24, fn. 2.) Here, there is no indication in the record that defendant renewed his request for self-representation in the weeks spanning February 3 to the first day of jury selection on April 27, 2022. Granted, criminal proceedings had been suspended between February 3 and March 10, while defendant's competency was being evaluated, but from March 10 to April 27, defendant did not seek to self-represent, even though he made yet another *Marsden* request at an April 21 pre-trial hearing.

14

Though defendant did make a *Faretta* request on April 27, which the court denied as untimely, the propriety of that denial has not been challenged.

Defendant next argues the trial court did not deny his February 3 *Faretta* request because it was unequivocal, emotional, or the product of anger or frustration. He acknowledges, however, that our standard of review of whether a request for self-representation is unequivocal is a "matter of law." Nevertheless, he contends that "deference" should be given to the trial court's treatment of his *Faretta* request as unequivocal. In support, he cites to *People v. Dent* (2003) 30 Cal.4th 213 (*Dent*) and *United States v. Hernandez* (9th Cir. 2000) 203 F.3d 614 (*Hernandez*).

Initially, and more generally, we disagree with the suggestion that we are constrained by a trial court's assessment of a purported *Faretta* request. Case law is clear that reviewing courts are not bound by a trial court's understanding that a defendant made a *Faretta* request. (*People v. Boyce* (2014) 59 Cal.4th 672, 703; *Barnett, supra*, 17 Cal.4th at p. 1087.) And contrary to what defendant implies, there appears no authority suggesting that a trial court's failure to expressly find a request is equivocal mandates a conclusion that a defendant's *Faretta* rights were infringed. Instead, when the record as a whole establishes that a request to self-represent was equivocal, the trial court's denial of the request will be upheld, even if the denial was for a different and improper reason. (*Dent, supra*, 30 Cal.4th at p. 218.)

In any event, defendant's argument is unpersuasive because it incorrectly assumes the trial court treated his request as unequivocal. Defendant claims the court "engaged with the request as a serious one," but our review of the record discloses that the trial court expressed no view as to whether or not defendant's request was unequivocal. When defendant raised

15

the matter, the court simply asked defendant four questions—if he had been to law school, if he had questioned witnesses, if he had argued motions, and if he had picked a jury—and thereafter told defendant he was trying to help him and would not allow him to represent himself. Indeed, as defendant appears to acknowledge, the court did not provide the advisements to be expected when a defendant makes an unequivocal *Faretta* request. (See, e.g., *People v. Phillips* (2006) 135 Cal.App.4th 422, 428 (*Phillips*).[3])

Finally, defendant cites to federal cases in which requests to proceed pro se were found unequivocal even though conditional. (*Hernandez, supra*, 203 F.3d at p. 621; *Adams v. Carroll* (9th Cir. 1989) 875 F.2d 1441, 1444 (*Adams*).)

We take no issue with the proposition that a *Faretta* request conditioned on the denial of a *Marsden* request may be deemed unequivocal. But notably, the *Hernandez* court did not end its analysis after looking at the

---

[3]    As the court in *Phillips* explained, "Faced with an unequivocal request for self-representation, the trial court must determine whether the defendant is competent to waive his right to counsel, that is, whether he has the ability to understand the proceedings in which he has asked to represent himself and whether he understands the dangers and disadvantages of self-representation. [Citation.] In order to decide the latter, the trial court must discuss with the defendant the consequences of his decision. He should at least be advised that: self-representation is almost always unwise and that the defense he conducts might be to his detriment; he will have to follow the same rules that govern attorneys; the prosecution will be represented by experienced, professional counsel who will have a significant advantage over him in terms of skill, training, education, experience, and ability; the court may terminate his right to represent himself if he engages in disruptive conduct; and he will lose the right to appeal his case on the grounds of ineffective assistance of counsel. [Citation.] In addition, he should also be told he will receive no help or special treatment from the court and that he does not have a right to standby, advisory, or cocounsel." (*Phillips, supra*, 135 Cal.App.4th at p. 428.)

16

defendant's statement. The court went on to assess the defendant's conduct and other circumstances: "The record gives no indication that Hernandez's statement constituted an emotional outburst, or anything other than a sincere and unambiguous request. Moreover, the district judge's response to Hernandez's request strongly supports the conclusion that it was unequivocal. [Citation.] When Hernandez asked to represent himself, the district judge . . . acknowledged the unambiguous character of the request by stating that he was willing to grant it and by then beginning a dialogue with Hernandez to determine whether it was voluntary and intelligent." (*Hernandez*, *supra*, 203 F.3d at p. 621.) The facts in *Hernandez* present no parallel to those here.

In *Adams*, *supra*, 875 F.2d 1441, the question was whether "a request to proceed without counsel [is] unequivocal where the defendant consistently wishes to invoke the right only as an alternative to the appointment of a particular defense attorney?" (*Adams*, at p. 1442.) There, an unequivocal request was found where the defendant made persistent and repeated conditional requests. (*Adams*, at pp. 1444–1445.) Here, defendant made clear he wanted to fire his attorney and get a different one who would follow his instructions. But his request to self-represent on February 3 was made while he appeared emotional and frustrated over the prosecutor's rejection of his counteroffer and the trial court's denial of his latest *Marsden* motion.

Considering the record as a whole, we conclude the court did not err in denying the purported *Faretta* request.

**B. Waiver of Jury Trial on Aggravating Circumstances**

Relying on *Apprendi v. New Jersey* (2000) 530 U.S. 466, *Blakely v. Washington* (2004) 542 U.S. 296, and *Cunningham v. California* (2007) 549 U.S. 270, defendant contends the trial court erred in failing to obtain a

17

personal and express waiver of his right to a jury trial on the aggravating circumstances. And relying on section 1170, subdivision (b), he also argues the court's imposition of the upper term was in error.

### 1. *Additional Factual Background*

As mentioned, the People charged defendant with four counts of robbery. As to each count, the People alleged the following aggravating circumstances set out in rule 4.421(b)(2) through (5): "(2) The defendant's prior convictions as an adult or sustained petitions in juvenile delinquency proceedings are numerous or of increasing seriousness; [¶] (3) The defendant has served a prior term in prison or county jail under section 1170(h); [¶] (4) The defendant was on probation, mandatory supervision, postrelease community supervision, or parole when the crime was committed; and [¶] (5) The defendant's prior performance on probation, mandatory supervision, postrelease community supervision, or parole was unsatisfactory."

While the jury was deliberating, defense counsel indicated to the trial court that defendant wanted a jury trial on the prior conviction allegations. The prosecutor asserted it was unclear if a jury had to make the findings regarding the aggravating factors, and asked that the jury also make those findings "in an abundance of caution." (Capitalization omitted.) The court assented to the prosecutor's request. Ultimately, however, the jury was excused after being informed that a court trial would be held on the prior conviction allegations. Defense counsel stated for the record that defendant "waiv[ed] his right to a jury trial on the priors." (Capitalization omitted.)

At the bench trial, the People presented certified records from the California Department of Corrections and Rehabilitation regarding defendant's prior convictions, namely, his "Chronological Movement History,"

18

an abstract of judgment from a 2007 sentencing, a fingerprint card, and an "Offender Photograph" from the state parole office. Based on these certified records, the trial court found defendant suffered prior convictions for carjacking (§ 215, subd. (a)), first degree robbery (§ 211), first degree burglary (§ 459), assault with a firearm (§ 245, subd. (a)(2)), and evading a police officer in willful disregard (Veh. Code, § 2800.2, subd. (a)). When asked for comment "on the special allegations regarding the California Rules of Court" (capitalization omitted), defense counsel argued the court should find the aggravating circumstance in rule 4.421(b)(2) not true because defendant was convicted of his priors when he was 17 years old and his priors are more serious than the currently charged offenses. Defense counsel also asked the court to find the aggravating circumstance in rule 4.421(b)(5) not true because there was no evidence about defendant's performance on parole other than the fact that he committed the charged offenses while on parole.

The trial court found all of the alleged aggravating circumstances true beyond a reasonable doubt. As relevant here, with regard to the aggravating circumstance in rule 4.421(b)(2), the court indicated the prior convictions were not of increasing seriousness but they were numerous. As for the aggravating circumstance in rule 4.421(b)(5), the court found the record of conviction established defendant's parole status at the time he committed the robberies in this case.

The trial court sentenced defendant to the upper term of five years for one of the robbery counts (count 1), doubled to 10 years under the "Three Strikes" law. The court also sentenced defendant to one-third of the mid-term on the remaining two robbery counts, but stayed one of the sentences pursuant to section 654 (count 2) and ordered the remaining count (count 4) to run concurrently with count 1. Finally, the court imposed one consecutive

19

five-year term for a prior serious felony conviction. Although it declined to strike all of the strike priors, the court noted it utilized only one of four available strike priors to sentence defendant. In doing so, the court explained it considered, among other things, defendant's youth when he committed the strike prior, and the fact that the prior strike was more than five years old, both of which are mitigating circumstances under section 1385, subdivision (c)(2). For the same reasons, the court chose to impose a concurrent sentence on the subordinate robbery count.

With regard to aggravating circumstances, the trial court indicated it relied on the aggravating circumstances set forth in rule 4.421(b)(2) through (5). Additionally, the court commented that defendant had other pending criminal investigations and a pending domestic violence case. The court also indicated it was taking into account comments made at some point by a parole agent regarding defendant's failure to engage in unspecified services. As for mitigating circumstances, the court found that defendant did not use a firearm and that no victim was physically harmed, but it also found no mitigating factors "as it relates to defendant." (Capitalization omitted.)

### 2. Analysis

Though the People do not raise the issue, we begin by addressing whether defendant had a right to a jury trial on the aggravating factors set out in rule 4.421(b)(2) through (5). We discuss this because there is California Supreme Court precedent on point, which we are not free to ignore. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

"In *Apprendi* . . . , the United States Supreme Court held that 'any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' Subsequently, in *Blakely* . . . , the high court clarified that the

20

'prescribed statutory maximum' for purposes of the right to a jury trial is not necessarily the maximum penalty provided by statute for the crime; rather, it is 'the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.' [Citation.] As thereafter explained in *Cunningham*, 'under the Sixth Amendment, any fact that exposes a defendant to a greater potential sentence must be found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence.' " (*People v. Towne* (2008) 44 Cal.4th 63, 74 (*Towne*), italics omitted.)

Following *Cunningham*, the California Supreme Court decided *People v. Black* (2007) 41 Cal.4th 799 (*Black*) where the court rejected the defendant's argument that a jury must make the determination whether he had suffered prior convictions, and whether those convictions are "numerous or of increasing seriousness" as set out in rule 4.421(b)(2). (*Black*, at pp. 818–819.) The court explained that "[t]he United States Supreme Court consistently has stated that the right to a jury trial does not apply to the fact of a prior conviction" and the court further explained that the exception to the jury trial right for prior convictions "include[s] not only the fact that a prior conviction occurred, but also other related issues that may be determined by examining the records of the prior convictions." (*Id.* at pp. 818–819.) The court went on: "The determinations whether a defendant has suffered prior convictions, and whether those convictions are 'numerous or of increasing seriousness' (Cal. Rules of Court, rule 4.421(b)(2)), require consideration of only the number, dates, and offenses of the prior convictions alleged." (*Black*, at pp. 819–820.)

Also following *Cunningham* was *Towne*, *supra*, 44 Cal.4th 63, where the California Supreme Court considered whether a defendant has the right

to a jury trial on the other recidivism-related aggravating factors in rule 4.421(b). (*Towne*, at pp. 76–77.) The court concluded "the federal constitutional right to a jury trial and proof beyond a reasonable doubt on aggravating circumstances does not extend to the circumstance that a defendant was on probation or parole at the time of the offense or has served a prior prison term." (*Id.* at p. 79; see *United States v. Haymond* (2019) 139 S.Ct. 2369, 2377, fn. 3 [noting the prior conviction exception].) As for the aggravating circumstance related to unsatisfactory performance on probation or parole, the court held the right to a jury trial does not apply "[w]hen a defendant's prior unsatisfactory performance on probation or parole is established by his or her record of prior convictions." (*Towne*, at p. 82.)

In line with the distinction drawn in *Black* and *Towne*, Senate Bill No. 567 amended section 1170 effective January 1, 2022 to provide that: "(1) When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term, except as otherwise provided in paragraph (2). [¶] (2) The court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial. . . . [¶] (3) Notwithstanding paragraphs (1) and (2), *the court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury*. This paragraph does not apply to enhancements imposed on prior convictions."

(Stats. 2021, ch. 731, § 1.3, italics added.)  The current version of section 1170 contains materially identical language.  (Stats. 2023, ch. 560, § 2.5.)

Though the foregoing authorities undermine the premise of defendant's argument that he had a categorical right to a jury trial on all of his recidivism-related aggravating circumstances, the California Supreme Court has granted review on the following question in *People v. Wiley* (2023) 97 Cal.App.5th 676, which may be implicated here:  "Did the sentencing court's consideration of circumstances in aggravation based on certified records of prior convictions, beyond the bare fact of the convictions, violate Penal Code section 1170, subdivision (b)(3) or defendant's Sixth Amendment right to a jury trial?"

We will assume defendant had a right to have a jury determine the truth of the recidivism-related aggravating circumstances and that he did not waive that right, but will assess whether the assumed error was harmless.

Preliminarily, we note the precise standard for assessing prejudice in cases where an aggravating factor is not submitted to a jury is unsettled. (Compare, e.g., *People v. Lopez* (2022) 78 Cal.App.5th 459, 465–467 with *People v. Dunn* (2022) 81 Cal.App.5th 394, 409–410, review granted Oct. 12, 2022, S275655.)  The issue is pending before the California Supreme Court. (*People v. Lynch* (May 27, 2022, C094174) [nonpub. opn.], review granted Aug. 10, 2022, S274942.)  Defendant asserts, without citation to authority, that the standard for assessing prejudice is as follows:  "First, a court must determine whether it can conclude beyond a reasonable doubt that a jury would have found any or all of the alleged aggravating circumstances true beyond a reasonable doubt.  If so, the court must then determine whether it is reasonably probable that the trial court would have imposed the same

23

sentence based on the existence of the aggravating circumstances that a jury would have found true."

We need not adopt any particular test. Instead, assuming defendant's proffered test for prejudice is correct, any error was harmless. Defendant concedes a jury would have found beyond a reasonable doubt that he served a prior prison term and was on parole at the time of the offenses. He fails to persuade us, however, that "there is no similar degree of certainty that a jury would have found the other two aggravating factors, numerous prior convictions and unsuccessful performance on parole, true."

With regard to the aggravating circumstance in rule 4.421(b)(5), it was undisputed that the jury here convicted defendant of three robberies he committed while on parole, and this plainly establishes unsatisfactory performance on parole. Defendant appears to acknowledge this, stating his "convictions in the instant case are technically sufficient to support a finding that he unsuccessfully performed on parole." Nevertheless, defendant claims the trial court did not rely on the convictions alone to find the aggravating circumstance in rule 4.421(b)(5) true; instead, he insists, the court relied both on the People's sentencing memorandum to conclude he was the subject of other investigations and pending charges and on comments by a parole agent that defendant failed to engage in services. This is unconvincing.

When the trial court found the aggravating factor in rule 4.421(b)(5) true at the bifurcated bench trial regarding the prior convictions and aggravating factors, it did so based on the record of conviction which showed defendant was on parole when he committed the robberies in the instant case. Though at the later sentencing hearing the court suggested it considered defendant's other criminal investigations and pending charges, and noted the alleged remarks of defendant's parole agent, the court never

24

indicated these were integral to its earlier finding regarding the aggravating circumstance. (*People v. Ramirez* (2021) 10 Cal.5th 983, 1042 ["Absent evidence to the contrary, we presume that the trial court knew the law and followed it"].)

As for the aggravating circumstance in rule 4.421(b)(2), the certified record of conviction shows defendant had five prior felony convictions for carjacking, first degree robbery, first degree burglary, assault with a firearm, and evading a police officer. This is plainly "numerous." (*Black*, *supra*, 41 Cal.4th at p. 818 [three prior misdemeanor convictions plus two prior felony convictions are "numerous"].)

In resisting this conclusion, defendant claims a jury might not have found beyond a reasonable doubt that he had "numerous" prior convictions because all of his convictions occurred in a single case, and sentences on three of the five prior convictions were stayed pursuant to section 654, indicating the convictions were either "alternative statements of the same offense or part of a single course of conduct." Defendant cites no authority holding or otherwise suggesting that application of section 654 is relevant to whether prior convictions are "numerous." In any event, even if a jury would not have found this particular aggravating circumstance true beyond a reasonable doubt, given the record and the court's sentencing choices, it is reasonably probable that the court would have imposed the same sentence given the other aggravating circumstances, i.e., that he served a prior prison term, that he was on parole at the time of the robberies, and that he performed unsuccessfully on parole. As will be discussed below, the court sentenced defendant using only a single strike, even though four strike priors were pleaded and proven, and the court ran one of the subordinate terms concurrent rather than consecutive to the principal term. In doing so, the

25

court noted defendant's youth when he committed the priors, and that the prior convictions were more than five years old. The court further indicated it imposed the total sentence of 15 years because it believed that sentence was fair and adequately addressed the crimes. Nothing in the record suggests the court would have sentenced defendant more leniently but for its finding that his prior convictions were numerous under rule 4.421(b)(2).

In sum, we reject defendant's claim.

## C. Ineffective Assistance of Counsel

Finally, defendant contends defense counsel was ineffective. He first complains that defense counsel did not argue the fact that his prior serious felony conviction was more than five years old and mitigating under rule 4.423(b)(13), which states that mitigating factors "relating to the defendant" include when "[a]n enhancement is based on a prior conviction that is over five years old." He argues the court did not understand this was a mitigating circumstance under rule 4.423(b)(13), given its statement that "the court does not find any factors in mitigation as it relates to the defendant." (Capitalization omitted.) We reject this.

To establish ineffective assistance, a "defendant must first show counsel's performance was deficient, in that it fell below an objective standard of reasonableness under prevailing professional norms. Second, the defendant must show resulting prejudice, i.e., a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.) "A defendant who raises the issue on appeal must establish deficient performance based upon the four corners of the record. 'If the record on appeal fails to show why counsel acted or failed to act in the instance asserted to be ineffective, unless counsel was asked for an explanation and

26

failed to provide one, or unless there simply could be no satisfactory explanation, the claim must be rejected on appeal.' " (*People v. Cunningham* (2001) 25 Cal.4th 926, 1003.)

Here, defendant fails to establish deficient performance. The record is silent as to why defense counsel did not specifically argue the age of the prior conviction was mitigating under rule 4.423(b)(13), but a reason is apparent. In her sentencing memorandum, counsel argued the trial court should dismiss defendant's strike priors, impose the upper term on count 1, stay a one-third mid-term sentence on one of the other counts, and impose a one-third mid-term sentence on the last count. Though she did not reference rule 4.423(b)(13), defense counsel argued the court should strike the strike priors in part because defendant served a lengthy sentence for his prior convictions, which he committed when he was young. Subsequently, the court sentenced defendant utilizing only a single strike, even though four strike priors were pleaded and proven. In doing this, the court explicitly took into consideration the fact that the prior conviction was over five years old, a mitigating circumstance under section 1385, subdivision (c)(2)(H).[4]

Under the circumstances, defense counsel could reasonably have believed that arguing the age of the prior conviction was also mitigating under rule 4.423(b)(13) would not succeed in avoiding an upper term sentence on one of the robbery counts, and would detract from her attempt to dismiss

---

[4]     Section 1385 permits a court to dismiss an enhancement if it is in furtherance of justice to do so. Section 1385, subdivision (c)(2) provides: "In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present." Subdivision (c)(2)(H) of section 1385 sets out the following mitigating circumstance: "The enhancement is based on a prior conviction that is over five years old."

defendant's strike priors. Dismissing the strike priors was counsel's evident priority, and reasonably so, given the potential of strike priors to greatly increase the sentence.

In addition to the foregoing, defendant fails to establish prejudice. There is nothing in the record indicating the trial court would not have imposed an upper term on one of the robbery counts had counsel mentioned rule 4.423(b)(13). The trial court already considered that as a factor in mitigation under section 1385, and the court correctly found true multiple aggravating circumstances.

Finally, defendant also contends that defense counsel was ineffective because she did not object to the trial court basing its finding on the aggravating circumstance in rule 4.421(b)(5) on unproven allegations that defendant failed to engage in services and had other pending investigations and cases.

Again, defendant fails to establish deficient performance. The record is silent as to why counsel did not object to the identified comments. As the People point out, however, at the bifurcated bench trial, the court found the aggravating circumstance in rule 4.421(b)(5) true based on the certified records. Defense counsel could reasonably have decided against objecting given that the court correctly found the aggravating circumstance true. For similar reasons, defendant fails to demonstrate prejudice.

In sum, we reject defendant's claim of ineffective assistance of counsel.

### DISPOSITION

The judgment is affirmed.

_____
Fujisaki, Acting P.J.

WE CONCUR:


_____
Petrou, J.


_____
Rodríguez, J.

*People v. Scott* (A165540)

29