Filed 12/16/14  P. v. Green CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

|  |  |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>COREY LAVELLE GREEN,<br><br>Defendant and Appellant. | B253014<br><br>(Los Angeles County<br>Super. Ct. No. GA085100) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Stanley Blumenfeld, Jr. and Teri Schwartz, Judges.  Affirmed.

Matthew Alger, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General; Lance E. Winters, Senior Assistant Attorney General; James William Bilderback II, Supervising Deputy Attorney General; and Robert C. Schneider, Deputy Attorney General, for Plaintiff and Respondent.

_____

Corey Green was charged with multiple felonies.  On the day of his preliminary hearing, Green made a motion to represent himself under *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*).  The trial court denied the motion with respect to the preliminary hearing, but invited Green to renew the motion for any future proceedings.  Although Green made several subsequent motions to replace his appointed counsel, he never renewed his request for self-representation.  The jury convicted Green on all counts.  On appeal, he contends his *Faretta* motion was improperly denied.  We affirm.

## FACTUAL BACKGROUND

### A.      *Summary of Police Investigation*

On September 30, 2011, the Pasadena Fire Department was dispatched to an apartment building.  Upon arrival, firefighters discovered the body of Maria Donnelly.  A subsequent autopsy revealed that Donnelly had nine fractured ribs, a fractured neck bone and hemorrhages in the muscles of her neck.  A pathologist concluded Donnelly had likely died of strangulation.

The Pasadena Police Department arrested Donnelly's boyfriend, defendant Corey Green, in connection with her death.  On December 21, 2011, detective Keith Gomez conducted a recorded interrogation of Green, who confessed to killing Donnelly.  Green stated that, on September 27, 2011, he had been drinking with Donnelly at her apartment.  While Green was sleeping, Donnelly used his cell phone to call Felicia Welsh, who was also in a relationship with Green.  When Green woke up, he saw that Welsh had called and texted him about the incident.  Green became angry at Donnelly and began fighting with her.  During the altercation, Green punched Donnelly in the stomach and put his "hands on her neck."  Donnelly eventually stopped moving.  Green thought Donnelly was "faking" it.  After 20 minutes, however, Donnelly remained unconscious.  Green "freaked out" and left her apartment.

Green returned to Donnelly's apartment a couple of days later and saw her body in the same position.  The next day, Green went back to the apartment with a bottle of gasoline to try to "cover . . . up" what he had done.  Green poured the gasoline over

2

Donnelly's body and a blanket that was covering her. He then lit a piece of tissue with a "red or green lighter," dropped the tissue onto the gasoline and ran out of the apartment. Green left the lighter at the building.

At the end of the interrogation, Green informed detective Gomez that he wanted to "write down some additional thoughts and feelings." Gomez returned to the detention facility the following day and provided Green with a pen and notebook. Green spent approximately one hour writing out a statement in which he admitted that he got into a fight with Donnelly and that she had stopped moving. Green also admitted he had returned to Donnelly's apartment several days later and used gasoline to ignite her body. Green stated that he had not intended to hurt Donnelly and described her death as an accident.

Green was eventually charged with one count of murder (Pen. Code, § 187, subd. (a)), one count of arson of an inhabited structure (Pen. Code, § 451, subd. (b)) and one count of residential burglary (Pen. Code, § 459).

### B. Trial Court Proceedings

On the morning of Green's preliminary hearing, he made a motion to replace his appointed counsel. The trial court held a hearing pursuant to *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*) and denied the motion. Immediately after the court made its ruling, Green announced he wanted to "exercise [his] *Faretta* rights" to self-representation. (See *Faretta, supra*, 422 U.S. at pp. 834-835.) In response, the court asked Green whether he was prepared to proceed with the preliminary hearing in the event his request was granted. Green stated "not today, no," explaining that he needed to "go through the paperwork" to determine how much time he would need to prepare himself. The court then inquired whether the prosecution was prepared to proceed. The prosecutor stated he was "ready" and had three witnesses present, including two police officers and a "civilian" witness.

The court denied Green's motion to represent himself at the preliminary hearing, but invited him to renew the motion for any future proceedings: "At this

point Mr. Green, I'm going to deny the request for you to be permitted to represent yourself for purpose of these proceedings. I don't think it's a timely request. I think the People brought in all of their witnesses. And the People are ready to go. [¶] . . . [¶] But it's certainly a request that can be renewed. And I just want to proceed with the preliminary hearing. I think that the People have a right – and there is a civil witness present that was made to come in today to testify. This matter has been pending in court for several months. So I do think it's an untimely request with respect to the proceedings today. But I'll be happy to consider that request if there are further proceedings after today." In response to these statements, Green stated "yes your honor."

At the conclusion of the preliminary hearing, the court found there was sufficient evidence to establish probable cause that defendant had committed each of the charged felonies. During pretrial hearings held in November of 2012 and October of 2013, Green brought two additional *Marsden* motions seeking new appointed counsel. Green did not, however, renew his request for self-representation.

### C. Trial

At trial, the prosecution called Felicia Welsh, who testified that she had received a telephone call from Green's cell phone number on September 27, 2011. When she answered the phone, she heard a woman who sounded like Donnelly. Welsh became angry and sent a series of text messages to Green's cell phone number. Welsh further testified that, at some point after she sent the text messages, Green told her he had killed Donnelly. Welsh also received a text message from Green's cell phone stating "Felicia, please, I did it, I swear I did."

The prosecution also called several witnesses who had participated in the investigation of Donnelly's death. Detective Gomez testified that, on December 21, 2011, he had conducted a recorded interrogation of Green. The recording was then played for the jury. Gomez also testified that he had watched Green prepare a written statement, which Gomez read to the jury.

4

Wendell Eaton, an arson investigator with the Pasadena Fire Department, testified that he was dispatched to Donnelly's apartment building on September 30, 2011. When he arrived at the premises, he saw a red lighter outside the entrance to Donnelly's apartment. Jeanne Putinier, a forensic scientist at the Orange County Crime Laboratory, testified that DNA recovered from the lighter matched Green's DNA and that the chances of a person having the same DNA sequence were 1 in 40 million. During her testimony, Putinier clarified that she had not personally "extracted, quantitated or typed" the DNA from the lighter, but had only been given "a copy of the results and [was] asked to interpret" them.

After the prosecution completed presenting its evidence, Green made another *Marsden* motion seeking new appointed counsel. The court held a hearing and concluded that Green did not actually desire new counsel.

Green testified in his defense and denied having killed Donnelly. Although Green admitted detective Gomez had interviewed him on December 21, 2011, Green denied that he was the person speaking on the recording that was played to the jury. Green also denied having written the statement that Gomez read to the jury. The jury convicted Green of all counts. He was sentenced to state prison for a total aggregate of 36 years to life.

## DISCUSSION

Green raises two issues on appeal. First, he asserts the trial court violated his Sixth Amendment right to self-representation. Second, he contends the testimony of the prosecution's DNA expert, Jeanne Putinier, violated his rights under the Confrontation Clause.

### A. *The Trial Court Did Not Violate Green's Sixth Amendment Right to Self-Representation*

In *Faretta*, the United States Supreme Court held that a defendant in a criminal case has a constitutional right under the Sixth Amendment "to proceed without counsel when he voluntarily and intelligently elects to do so." (*Faretta, supra*, 422 U.S. at

p. 807.) Subsequent decisions make clear, however, that there are "limits on the right to act as one's own attorney. . . . *Faretta* right may be waived by failure to make a timely request to act as one's own counsel [citation], or by abandonment and acquiescence in representation by counsel [citation]. The court may deny a request for self-representation that is equivocal, made in passing anger or frustration, or intended to delay or disrupt the proceedings." (*People v. Butler* (2009) 47 Cal.4th 814, 824 (*Butler*).)

Green initially contends that the trial court had no basis to deny his *Faretta* motion with respect to the preliminary hearing. We disagree. Green made his request moments before the preliminary hearing was scheduled to begin. He offered no explanation for the lateness of his request and informed the court he would need a continuance to prepare himself. The prosecution, which had received no advance notice, was ready to conduct the hearing and had three witnesses present, including a civilian witness. Under such circumstances, the court was justified in denying the request on timeliness grounds. (See *People v. Burton* (1989) 48 Cal.3d 843, 854 ["The fact that the granting of the [*Faretta*] motion will cause a continuance, and that this will prejudice the People, may be evidence of the defendant's dilatory intent"]; *People v. Windham* (1977) 19 Cal.3d 121, 129, fn. 5 ["a defendant should not be permitted to wait until the day preceding trial before he moves to represent himself and requests a continuance in order to prepare for trial without some showing of reasonable cause for the lateness of the request"]; *People v. Scott* (2001) 91 Cal.App.4th 1197, 1206 ["[*Faretta*] [m]otions made just prior to the [proceedings] are not timely"].)

Green also argues that, even if the court properly denied the motion for the purposes of the preliminary hearing, the court should have permitted Green to represent himself at trial. Green contends that because his motion "was made more than eight months before trial was even scheduled," it was necessarily timely and therefore should have been granted.

It is well-settled that "after a defendant invokes the right to self-representation, a waiver may be found if it reasonably appears that the defendant abandoned the request." (*People v. Tena* (2007) 156 Cal.App.4th 598, 610 (*Tena*); see also *People v. Dunkle*

6

(2005) 36 Cal.4th 861, 909 ["the *Faretta* right, once asserted, may be waived or abandoned"] [disapproved on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22]; *People v. Kenner* (1990) 223 Cal.App.3d 56, 62 ["a defendant's conduct may indicate an abandonment or withdrawal of a request for a *Faretta* hearing"].) In *People v. Stanley* (2006) 39 Cal.4th 913, the California Supreme Court considered whether the trial court had erred in denying a request for self-representation that the defendant had made "in the course of a . . . motion for substitution of counsel." (*Id*. at p. 929.) The trial court denied the motion based on the defendant's inability to understand the consequences of his request. The court also denied defendant's *Marsden* motion for substitution of appointed counsel. Five months later, the trial court granted a subsequent "request for substitution of counsel . . ., and a new attorney . . . was appointed to represent defendant at the preliminary hearing and throughout trial. Defendant accepted the appointment . . . and never again renewed his request for self-representation under *Faretta*." (*Id*. at p. 930.) The Supreme Court ruled that "[i]n light of defendant's subsequent acceptance of . . . appointed counsel to represent him without ever renewing his request for self-representation, . . . he must . . . be found to have ultimately abandoned his desire to invoke his *Faretta* rights." (*Id*. at p. 933.)

This case cannot be meaningfully distinguished from *Stanley*. Like the defendant in *Stanley*, Green made his *Faretta* motion in the course of a motion for substitution of appointed counsel. After both motions were denied, Green made additional requests for substitution of appointed counsel before and during trial without ever renewing his request to represent himself. As in *Stanley*, Green's decision to seek newly appointed counsel without ever renewing his request for self-representation constitutes an abandonment of his desire to invoke his *Faretta* rights. Indeed, the facts of this case present an even clearer case of abandonment given that the trial court expressly invited Green to renew his *Faretta* motion for any proceedings held after the preliminary hearing. Green's decision not to accept that express invitation, combined with his repeated requests for substitution of appointed counsel, demonstrates he had "abandoned any desire he may have harbored to represent himself." (*Tena*, *supra*, 156 Cal.App.4th at

7

p. 612 [*Faretta* request abandoned where defendant "never accepted [trial judge's] invitation to renew his request following preliminary hearing" and then proceeded with retained counsel].)

### B. *Green Concedes that, Under Current California Case Law, there Was no Confrontation Clause Violation*

Green also argues that the testimony of the prosecution's DNA expert, Jeanne Putinier, violated his Sixth Amendment right to confront the witnesses against him. At trial, Putinier testified that DNA test results performed on a biological sample recovered from a lighter found at Donnelly's apartment were consistent with Green's DNA. She admitted, however, that she did not conduct the DNA testing and had only been assigned to interpret the results of the test. Green contends that, under the Confrontation Clause, Putinier was not permitted to rely on tests conducted by other individuals who did not testify. Green concedes this argument is foreclosed by "California case law," explaining that he has raised the issue to "preserve [it] for federal court review." Accordingly, we need not address the issue.

### DISPOSITION

The judgment is affirmed.

ZELON, J.

We concur:

WOODS, Acting P. J.

SEGAL, J.[*]

_____

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

8