Filed 7/24/24  P. v. Bowersock CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B324814 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. PA019046) |
| v. | |
| MARK BOWERSOCK, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Daniel B. Feldstern, Judge.  Affirmed.

Leonard J. Klaif, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Wyatt E. Bloomfield, Supervising Deputy Attorney General, and William H. Shin, Deputy Attorney General, for Plaintiff and Respondent.

In 1996, a jury convicted defendant Mark Bowersock (defendant) of first degree murder.  Many years later, defendant petitioned for resentencing under Penal Code section 1172.6 (former Penal Code section 1170.95).[1]  We are asked to decide whether to reverse the trial court's order denying the petition because the court did not grant defendant's requests to relieve his appointed attorney under *People v. Marsden* (1970) 2 Cal.3d 118 and *Faretta v. California* (1975) 422 U.S. 806.

## I.  BACKGROUND

The Los Angeles District Attorney charged defendant with murdering Laurie Ann Prejean (Prejean), his former romantic partner.  The District Attorney alleged defendant shot and killed her in retaliation for her testimony against him in a criminal proceeding.  The District Attorney also charged defendant with robbing Prejean and burglarizing her home.

In June 1996, a jury found defendant guilty of first degree murder and first degree residential burglary (the jury was unable to reach a verdict on the robbery charge).  The jury also found true an allegation that defendant used a firearm when he committed both offenses and a special circumstance allegation that the murder was committed in retaliation for Prejean's testimony.  The trial court sentenced defendant to life without the possibility of parole.  The judgment of conviction was affirmed on direct appeal.

In January 2022, defendant petitioned for resentencing pursuant to section 1172.6.  Defendant requested the trial court

---

[1]     Undesignated statutory references that follow are to the Penal Code.

2

appoint counsel, and the court appointed a deputy public defender to represent him.

In support of his petition, defendant submitted a declaration stating he did not kill Prejean in retaliation for her testimony; instead, he claimed he had been released from custody as a result of her testimony. Defendant also claimed he harbored no malice aforethought because he went to Prejean's home only to return her tax statements and to pay his portion of shared utility bills. Defendant additionally asserted gunshot residue tests showed Prejean pulled the trigger of the murder weapon.

The People opposed defendant's petition. The People argued defendant was ineligible for relief as a matter of law because the record of conviction (mainly, the jury instructions given at his trial) reveals he was not convicted pursuant to the felony murder rule, the natural and probable consequences doctrine, or any other theory of imputed malice.

In July 2022, the trial court held a hearing to ascertain how much time the defense needed to respond to the People's opposition. During the hearing, the court advised the parties it had received two written statements by defendant "relating to his legal representation for th[e] petition" and would need to address the statements ex parte with defense counsel. The court accordingly calendared what it described as an ex parte "'*Marsden* hearing.'"[2]

---

[2]     Before that hearing, defendant personally filed a reply to the People's opposition and argued he would be entitled to relief following a complete evidentiary hearing if certain items of allegedly exculpatory evidence, which had been withheld from his trial, were produced. Defendant's appointed attorney also filed a reply to the People's opposition. That reply argued defendant

3

The trial court held the "*Marsden* hearing" in September 2022 (with only defendant and appointed counsel present). The court began by briefly describing the two letters it had received from defendant: the first of which was dated May 25, 2022, and entitled "Conflict of Interest with the Public Defender" and the second of which was dated June 10, 2022, and entitled "*Marsden* Motion Conflict of Interest." The letters asked the court to appoint a new attorney or allow defendant to retain counsel of his choosing.

The court advised defendant that it believed he was not entitled to a *Marsden* hearing, to fire his court-appointed counsel without court approval, or to represent himself because the proceedings before the court were post-conviction. Nonetheless, the court stated it would consider defendant's request as a "*Marsden*-like motion."

The court gave defendant the opportunity to speak to the purported conflict of interest and defendant argued a conflict existed because, during his criminal prosecution, "the public defender's office worked hand[-]in[-]hand with the district attorney's office to cover up this evidence that proves [his] innocence." In addition to alleged misconduct by his trial attorney, defendant claimed his current attorney was "against him" and had "made it clear she would not argue on [his] behalf in [his] best interest." In questioning defendant about these assertions, the court inquired about recent events (including the statements he submitted in connection with his petition) and about more distant occurrences found in the court's file, such as a

_____

had made the requisite prima facie showing for relief and urged the court to issue an order to show cause and hold an evidentiary hearing.

4

post-conviction discovery request made in 2008 and the appointment of a lawyer who headed a post-conviction discovery unit not connected with the public defender's office.

After hearing from defendant and asking questions to better understand the basis of his concerns, the court invited defendant's appointed attorney to respond. Defense counsel, who was not involved in the representation of defendant at his earlier criminal trial, explained the steps she had taken on defendant's behalf since being assigned to the case, including case research (i.e., reviewing trial transcripts, jury instructions, and closing arguments) and communicating with her client. She acknowledged defendant did not agree with her assessment that the "odds [we]re not in his favor" on the petition, but she asserted she had done everything possible to assess his petition and provide him with the best legal advice. Defense counsel added that she had explained to defendant how the facts of his case fit within the parameters of section 1172.6 multiple times and defendant indicated he understood her explanations. As for defendant's claims of innocence, defense counsel stated she had advised defendant repeatedly to pursue those claims with a non-profit innocence project. When asked directly by the court, counsel stated she had no conflict of interest in representing defendant.

The trial court gave defendant a further opportunity to speak in light of defense counsel's response. Defendant told the court that prior to Prejean's death, the public defender's office had represented Prejean in connection with an altercation she had with him and had "declared conflicts of interest" with defendant in the past. When the trial court observed that it had reviewed the case file from "top to bottom" and had found no

record of a conflict of interest finding or even a notation that a potential conflict of interest had been raised during the trial proceedings, defendant offered nothing in reply. Instead, defendant repeated the claim that his appointed attorney told him he was not going to prevail on his petition.

The trial court ruled that there was no conflict of interest that would warrant relieving the public defender's office from representing defendant and denied defendant's request to relieve his attorney.

The court then turned to defendant's expressed interest in retaining private counsel. Defendant told the court that a friend was actively looking for an attorney to represent him and requested a 30-day continuance of the prima facie hearing on his section 1172.6 petition. In view of the fact that his petition had been pending for almost nine months, the court expressed reluctance to continue the matter. Defense counsel, however, reminded the court that this was defendant's first request for a continuance to attempt to find retained counsel, and the court thereafter agreed to the requested continuance. In addition, the court held open the possibility for a further continuance to allow private counsel to get up to speed on the petition if he or she promptly advised the court of his or her retention.

Less than two weeks before the continued prima facie hearing date, defendant filed a motion for "pro per status." Defendant explained that he wanted to represent himself "only if I do not have my paid attorney hired in time for the Oct. 26, 2022 prima facie hearing." In his supporting declaration he reiterated the same position: "In the event I do not have an attorney hired by [October 26, 2022], I want to proceed with pro per status for my prima facie hearing . . . ."

6

On October 26, 2022, the trial court held the continued prima facie hearing. Defendant was not present at the hearing and he had not retained private counsel. He continued to be represented by the appointed deputy public defender.

Based on the record of conviction, in particular the jury instructions, which the trial court reviewed in some detail on the record, the court found defendant was "not convicted of murder under the felony murder rule or the natural and probable consequences doctrine or any other theory under which malice is imputed to a person solely on that person's participation in a crime." The court found "defendant was convicted under a currently valid theory of murder as a direct perpetrator of the willful, deliberate, and premediated murder of Laurie Ann Prejean," and ruled he was, as a matter of law, ineligible for relief under section 1172.6.

The court also addressed defendant's self-representation request during the same hearing and explained its reasons for declining to relieve defendant's appointed attorney. The court stated defendant had made repeated representations over many months that he was in the process of retaining private counsel, but no such attorney had contacted the court in advance of the hearing. In addition, in view of defendant's submissions alleging collusion between defense counsel and the prosecution in the willful hiding of exculpatory evidence during his trial, the court concluded it was in defendant's best interests that he be represented by a trained lawyer. The court also "note[d], just parenthetically," that under *Martinez v. Court of Appeal of Cal., Fourth Appellate Dist.* (2000) 528 U.S. 152, a defendant does not have a Sixth Amendment right to represent himself in a post-conviction proceeding.

## II.  DISCUSSION

Our Supreme Court has held "there is no federal constitutional right to counsel under subdivision (c) of section 1172.6, and the right to counsel at [the prima facie] point in the proceedings is purely statutory."  (*People v. Delgadillo* (2022) 14 Cal.5th 216, 227.)  The parties likewise agree defendant did not have a right under the Sixth Amendment to represent himself at a section 1172.6 proceeding.  The parties, however, disagree about whether *Marsden* and *Faretta* principles can nevertheless apply in a post-conviction proceeding like this one.  That is a question we need not decide to resolve this appeal; we will assume for argument's sake that *Marsden* and *Faretta* principles apply.[3]

The record shows the trial court conducted an adequate *Marsden* hearing in which defendant's asserted conflicts of interest and appointed counsel's competence were addressed.  Based on the information developed at that hearing, there was no abuse of discretion in denying defendant's request to appoint new counsel under *Marsden*.  The trial court also did not err in denying defendant's request to represent himself.  Defendant's request was equivocal, and the law is well established that a court need not grant an equivocal self-representation request.

---

[3]     Regarding defendant's claim that the court erred in refusing to permit him to represent himself, we adopt the *Faretta* framing and mode of analysis defendant asks us to employ.

8

## A. The Trial Court Did Not Err in Denying Defendant's Marsden *Request*

"'When a defendant seeks to obtain a new court-appointed counsel on the basis of inadequate representation, the court must permit him or her to explain the basis of [the] contention and to relate specific instances of inadequate performance. The court must appoint a new attorney if the record clearly shows the current attorney is not providing adequate representation or that the defendant and counsel have such an irreconcilable conflict that ineffective representation is likely to result. [Citations.]'" (*People v. Rices* (2017) 4 Cal.5th 49, 69; accord, *People v. Ng* (2022) 13 Cal.5th 448, 500.)

"'"When a defendant seeks to discharge his appointed counsel and substitute another attorney, and asserts inadequate representation, the trial court must permit the defendant to explain the basis of his contention and to relate specific instances of the attorney's inadequate performance. [Citation.] A defendant is entitled to relief if the record clearly shows that the first appointed attorney is not providing adequate representation [citation] or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result.'" [Citation.] The decision whether to grant a requested substitution is within the discretion of the trial court; appellate courts will not find an abuse of that discretion unless the failure to remove appointed counsel and appoint replacement counsel would 'substantially impair' the defendant's right to effective assistance of counsel."'" (*People v. Vines* (2011) 51 Cal.4th 830, 878; see also *Ng*, *supra*, 13 Cal.5th at 500-501.)

Here, the trial court conducted an adequate hearing on defendant's *Marsden* request. The court not only allowed

9

defendant to voice his complaints against the public defender's office with regard to the conduct of his current attorney and his former trial attorney, it also clarified the nature of defendant's complaints by asking him questions about his written and oral statements and about items in the court file regarding post-conviction discovery requests. In addition, the court allowed appointed counsel to respond to defendant's grievance and to describe her representation of defendant and the communications they had concerning the petition's merits. That was sufficient. (See, e.g., *People v. Horton* (1995) 11 Cal.4th 1069, 1101-1103 [*Marsden* motion properly denied after trial court provided defendant "ample opportunity" to explain basis for complaints].)

The record the trial court developed also discloses no grounds to conclude the court abused its discretion when finding that replacing appointed counsel was not required. There is no evidence the deputy public defender's representation of defendant was compromised by a conflict of interest, a lack of diligence or competence, or an irreconcilable breakdown in communications between counsel and her client. Defense counsel may have expressed views defendant did not want to hear (that it would be difficult to prevail on his section 1172.6 petition), but those views were, by all appearances, well-informed. There was no reason to replace defendant's attorney for giving her client a candid assessment of his case.

> B.    *The Trial Court Did Not Err in Denying Defendant's* Faretta *Request*

"A trial court must grant a defendant's request for self-representation if three conditions are met. First, the defendant must be mentally competent, and must make his request

knowingly and intelligently, having been apprised of the dangers of self-representation. [Citations.] Second, he must make his request unequivocally. [Citations.] Third, he must make his request within a reasonable time before trial. [Citations.]" (*People v. Welch* (1999) 20 Cal.4th 701, 729; accord, *People v. Thomas* (2023) 14 Cal.5th 327, 397.)

The requirement that a *Faretta* motion be unequivocal helps to ensure that the defendant "truly desires" to represent himself. (*People v. Marshall* (1997) 15 Cal.4th 1, 23.) A defendant's request for self-representation is equivocal if the defendant's "'statements or actions create *any ambiguity as to his desire* to represent himself.'" (*Ibid.*) "[V]acillation between requests for counsel and for self-representation amounts to equivocation or to waiver or forfeiture of the right of self-representation." (*Id.* at 22.) An equivocal request is sufficient on its own to warrant denial. (*Marshall, supra*, 15 Cal.4th at 27 [upholding the denial of the defendant's *Faretta* motion on the independent ground that the request was equivocal]; *People v. Barnett* (1998) 17 Cal.4th 1044, 1109-1110 ["we reject defendant's claim that the court erred in denying his subsequent *Faretta* and *Marsden* motion . . . . For one thing, the record does not reflect an unequivocal assertion of the right of self-representation"].) In determining on appeal whether the defendant unequivocally invoked the right to self-representation, we examine the entire record de novo. (*Marshall, supra*, 15 Cal.4th at 24-25; *People v. Dent* (2003) 30 Cal.4th 213, 218.)

The record here "does not convey an unmistakable desire to forego counsel." (*Marshall, supra*, 15 Cal.4th at 26.) To the contrary, the record shows the opposite: defendant wanted the assistance of counsel—he just did not want the assistance of the

11

public defender's office or the particular deputy public defender appointed.  That, of course, is an equivocal request, and the trial court did not err in denying it.  (*People v. Tena* (2007) 156 Cal.App.4th 598, 609 [affirming denial of *Faretta* request where defendant's conduct showed that his request was "born of frustration at his public defender's decisions" and "from his frustrated desire for representation by private counsel," rather than from "a desire to represent himself"]; *People v. Williams* (2003) 110 Cal.App.4th 1577, 1592-1593 [holding *Faretta* request was equivocal because defendant's "request for substitute counsel, and then to represent himself, came only as a result of Williams's disagreement with defense counsel"]; *People v. Scott* (2001) 91 Cal.App.4th 1197, 1204, 1205-1206 [*Faretta* request equivocal where defendant said, "'if I can't get a [new] state appointed attorney, then I['ll] represent myself'"].)

## DISPOSITION

The order denying defendant's section 1172.6 petition is affirmed.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

BAKER, Acting P. J.

We concur:


MOOR, J.                              KIM, J.

12